STATE TRUST CO. v. KANSAS CITY, P. & G. R. CO. et al. (TEMPLE et al.,. Interveners).

(Circuit Court, W. D. Arkansas, Ft. Smith Division. May 2, 1902.)

1. FEDERAL COURTS—JURISDICTION.

Where suit for the foreclosure of a railroad mortgage was instituted in the federal court, and such court had appointed a receiver, and the railroad had been sold under such proceedings, the court had jurisdiction of an intervention by a creditor having obtained a judgment in a state court to determine priority of such judgment, as a lien on the property of the railroad.

2. SAME—STATE COURT—DECISION—RES JUDICATA.

Where a state court has determined that an action against a railroad company to recover a judgment, which shall be a preferred lien on the railroad's property, for injury to the property of the plaintiff, was brought within one year, as required by the statute creating such lien, the federal court will not review such question on a subsequent intervention of the judgment creditor, in proceedings to foreclose a mortgage on the railroad, to establish such judgment as a preferred claim.[1]

3. RAILROADS—INJURY TO PROPERTY—DAMAGES—LIENS—STATUTES—REPEAL.

Sand. & H. Dig. Ark. § 6251, declared that certain persons performing work, labor, and furnishing materials, machinery, or equipment for the operation of a railroad, and all persons sustaining. loss or damage to person or property, for which a liability may exist at law, should have a preferred lien on the road, equipments, etc. By Act. March 31, 1899, such section was amended so as to include other persons than those provided for in the original act; but that part of the statute giving a preferred lien for damages to person and property was reincorporated in the amending act in the same words as it previously existed, and by section 4 of the amending act all laws in conflict therewith were repealed. Held, that the latter act was only a continuation of the former in so far as injuries to property were concerned, and was not a repeal thereof in so far as rights previously accrued were concerned.

4. SAME—CONSTITUTIONAL LAW—VESTED RIGHTS.

Sand. & H. Dig. Ark. § 6251, declared that all persons who suffer loss or damage to person or property from any railroad, for which a liability may exist at law, should have a preferred lien therefor on the roadbed, etc. Held, that a person having a claim for damages to property, and having brought suit for the recovery thereof, before Act March 31, 1899, was passed, by which such section was amended, acquired a vested right in the lien provided by such statute, which the legislature had no power to devest by the subsequent act.

Williams & Arnold, for interveners.
Read & McDonough, for defendants.

ROGERS, District Judge. On the 2d of May, 1899, an ancillary bill in equity in the above-entitled cause was filed in this court; and on the same day Samuel W. Fordyce and Webster Withers, who had been appointed trustees by the circuit court of the United States for the Western division of the Western district of Missouri, under an original bill filed in that court on April 6, 1899, as a court of primary jurisdiction, were appointed receivers; and by the pro-

[1] Conclusiveness of judgments as between federal and state courts, see notes to Railroad Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.

visions of the sixth paragraph of the order appointing them receivers it was provided:

"Said receivers shall be authorized to pay out of any income or revenues which may come to their hands all debts which may have been lawfully contracted by the Kansas City, Pittsburg & Gulf Railroad Company since May 1, 1898, for services rendered to said company by its employés in the operation of its road, including herein reasonable salaries to its officers, and reasonable compensation for professional services rendered by attorneys; also all debts lawfully contracted during the aforesaid period for material and supplies furnished to said railway company, and used in the maintenance and operation of its road; and also all traffic balances, if there should be any, due to connecting carriers. Other claims and demands against said company shall only be paid by the receivers upon orders of court hereafter made, and the court reserves to itself the power to direct the payment of such other demands against said railway as it may deem to be of a preferential nature."

On February 5, 1900, a decree of foreclosure and sale of the property was entered in the court of primary jurisdiction upon a mortgage executed by the Kansas City, Pittsburg & Gulf Railroad, bearing date April 1, 1893; and said decree was on the 20th of February, 1900, also entered of record in this court. By the fifteenth paragraph of that decree, among other things, it was provided:

"The purchaser or purchasers of the property sold hereunder shall receive the deed therefor, and take the said property, upon the express condition that the said purchaser or purchasers, his or their heirs, executors, administrators, successors, or assigns, shall, to the extent of the property sold and conveyed, and so far as the items hereinafter mentioned may not have been otherwise paid or discharged, in whole or in part, out of the proceeds of the sale had hereunder, or out of the surplus funds or assets in the hands of the receivers herein, pay, satisfy, and discharge: * * * (4) Any unpaid indebtedness or liability contracted or incurred by said Kansas City, Pittsburg & Gulf Railroad Company in the operation of its railroad, payment whereof was provided for in paragraph 6 of the order appointing the receivers herein, and which is prior in lien or superior in equity to the said mortgage of April 1, 1893, upon its being finally adjudged to be thus prior in lien or superior in equity to said mortgage, and directing the payment thereof. (5) Any unpaid indebtedness or liability contracted or incurred by said Kansas City, Pittsburg & Gulf Railroad Company which may be finally found and decreed to be prior in lien or superior in equity to said mortgage of April 1, 1893. It is further considered, ordered, and adjudged and decreed that the purchaser or purchasers, his or their successors and assigns, as part consideration and purchase price of the property purchased, and in addition to the sum paid, take the same, and receive the deed therefor, upon the express condition that he or they, or his or their successors or assigns, shall pay, satisfy, and discharge any unpaid compensation which shall be allowed by this court to any of the officers or receivers thereof, and all indebtedness and obligations or liabilities which shall have been contracted and incurred by the receivers before delivery of the possession of the property sold, with the citizens and residents of Arkansas, and also pay any indebtedness or liabilities contracted or incurred by the said Kansas City, Pittsburg & Gulf Railroad Company and Texarkana & Ft. Smith Railroad Company, or either of them in the operation of said railroad prior to the appointment of the receivers in this case, which are prior in lien to said general mortgage, and, furthermore, that citizens and residents of Arkansas might establish their claims at any time within the period of the statute of limitations of the state of Arkansas, as provided by the terms of that order, anything appearing to the contrary in this order notwithstanding. And in the event said purchaser or purchasers shall refuse, after demand made, to pay any such indebtedness, obligation, or liability, the person holding the claim therefor,

whether established in a state court, or any other court of competent jurisdiction, may, upon fifteen days' notice to said purchasers, their successors or assigns, file his petition in this court to have such claim enforced against the property aforesaid in accordance with the usual practice in relation to claims of a similar character; and such purchaser or purchasers, his or their successors or assigns, shall have the right to appear and make defense to any claim, debt, or demand so sought to be enforced, and either party shall have the right to appeal from any judgment, decree, or order made thereon."

Jurisdiction of the cause was also retained, among other purposes, for that of enforcing such demand. Under that decree the property was subsequently sold to the Kansas City Southern Railway Company, as substituted bidder for, and purchaser of, said railroads, and all their property, privileges, and franchises, of every description, and on the 29th of March, 1900, said sale was approved and confirmed; and by the terms of the decree approving said sale it was provided:

"That the Kansas City Southern Railway Company, its successors or assigns, shall pay, satisfy, and discharge [among other things] any balance remaining unpaid upon the receivers' certificates duly issued under the order of this court. Any other indebtedness or obligation or liability which shall have been duly contracted or incurred by the receivers in the discharge of their duty. (4) Any unpaid indebtedness or liability contracted or incurred by said Kansas City, Pittsburg & Gulf Railroad Company in the operation of its railroad, payment whereof was provided for in paragraph 6 of the order appointing the receivers herein, and which is prior in lien or superior in equity to the said mortgage of April 1, 1893, upon its being finally adjudged to be thus prior in lien or superior in equity to said mortgage, and directing the payment thereof. (5) Any unpaid indebtedness or liability contracted or incurred by said Kansas City, Pittsburg & Gulf Railroad Company which may be finally found and decreed to be prior in lien or superior in equity to said mortgage of April 1, 1893."

And the right was also reserved in said order to retake and resell any of the premises so conveyed, or to appoint a receiver of said premises, if the said Kansas City Southern Railway Company, its successors or assigns, shall fail or refuse to pay any such sums which may in this cause, or by any of the courts of ancillary jurisdiction, be adjudged to be due and payable by said purchaser, its successors or assigns, under the provisions of said decree of sale of February 5, 1900, which said decree was entered of record in this court on March 29, 1900.

On the 15th day of December, 1900, the interveners, William Temple and J. G. Smithson, filed an intervention in this court in the above-named cause, and by amendment filed by leave of the court on September 26, 1901, made the Kansas City Southern Railway Company a party defendant, and to which intervention an answer was filed for all the defendants on April 16, 1902. By the intervention it is shown that the interveners on the 9th day of July, 1900, and at the July term of the circuit court of Little River county, Ark., recovered a judgment against the Kansas City, Pittsburg & Gulf Railroad Company for the sum of $275.24 and costs, taxed at $28.80, which judgment bears interest at 6 per cent. per annum from date; that said judgment was recovered for cotton destroyed by fire at Ogden on the 28th day of February, 1898 (Ogden being a station on the line of said Kansas City, Pittsburg & Gulf Railroad

115 F.—24

Company, in the state of Arkansas). In the face of the judgment, a certified copy of which is attached to the intervention, it is recited that:

"This suit having been brought upon the claim mentioned in the complaint within one year after it occurred, as provided by law, this judgment is declared a first lien on the property of the Kansas City, Pittsburg & Gulf Railroad Company, consisting of roadbed, buildings, equipments, income, franchises, and all other appurtenances of said railroad, superior and paramount to that of all persons interested in said road, as provided by the laws of this state."

And by the terms of the amended intervention it appears that since the rendition of the judgment the property of the Kansas City, Pittsburg & Gulf Railroad Company, upon which the judgment of said interveners was declared a lien, has by the decree of this court been sold, and the same purchased by the Kansas City Southern Railway Company, and said sale approved and duly confirmed on the 20th of March, 1900, and that the Kansas City Southern Railway Company is now the owner and in possession of said property; and by virtue of its said purchase, and the terms and provisions of the order approving the sale to it, it is expressly provided that the purchasers shall become the paymasters of such claims as the court shall adjudicate to be prior liens. The interveners pray that said claim against the Kansas City, Pittsburg & Gulf Railroad Company be allowed by the court, and for an order directing the said railway company to pay said judgment, and for all other and proper equitable relief.

The answer sets up three defenses: (1) That the court has no jurisdiction to hear and determine the case; (2) that the action of the interveners was not commenced within one year from the time the same accrued, and that said judgment was not and is not a lien upon the property of said railroad; (3) that said judgment is inferior in equity and law to the claim of the mortgagees in this foreclosure suit, and that said claim is not one that is entitled to preference, and it should not be adjudged a liability against the Kansas City Southern Railway Company, the purchaser herein. These defenses will be disposed of in their order.

That the court has jurisdiction to pass upon the questions raised by this intervention, the court thinks, is settled law. Reynolds v. Stockton, 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464; Kirker v. Owings, 39 C. C. A. 132, 98 Fed. 499; Ames v. Railroad Co. (C. C.) 60 Fed. 967; Cohen v. Mining Co. (C. C.) 95 Fed. 580.

As to the second defense, the question is settled by the decree of the state court, and will not be inquired into in this court. The court, therefore, holds that the suit was brought within one year next after the right of action accrued.

As to the third defense, i. e., that the judgment is inferior in equity to the claim of the mortgagees in this foreclosure suit, and is therefore not entitled to preference, and should not be adjudged a liability against the Kansas City Southern Railway Company, the purchaser herein, the case involves much more importance and difficulty. As before stated, the mortgage under which the foreclosure

took place bore date April 1, 1893. On the 19th of March, 1887 (see Sand. & H. Dig. Ark. § 6251), the legislature of Arkansas enacted the following statute, which was in full force when the mortgage in controversy was executed:.

"Every mechanic, builder, artisan, workman, laborer, or other person, who shall do or perform any work or labor upon, or furnish any materials, machinery, fixtures or other thing towards the equipment, or to facilitate the operation of any railroad; *and all persons who shall sustain loss or damage to person or property from any railroad for which a liability may exist at law, shall have a lien therefor upon the roadbed,* buildings, equipments, income, franchises, and all other appurtenances of said railroad, superior and paramount, whether prior in time or not, to that of all persons interested in said railroad as managers, lessees, mortgagees, trustees and beneficiaries under trusts or owners."

By the two following sections it is provided that suit shall be instituted within one year after the cause of action accrues, and that the lien shall be mentioned in the judgment rendered on the claim in an ordinary suit for the claim, and may be enforced by ordinary levy and sale under final or other process at law or in equity. Act March 19, 1887. Manifestly the mortgagee or trustee in the mortgage which was foreclosed in this case took the mortgage subject to the provisions of this statute. But on March 31, 1899, the following statute was enacted:

"Be it Enacted by the General Assembly of the State of Arkansas:
"Section 1. That section 6251 of Sandels & Hill's Digest be amended so as to read as follows: 'Every mechanic, contractor, sub-contractor, builder, artisan, workman, laborer, or other person who shall do or perform any work or labor, or cause to be done or performed any work or labor upon, or furnish any materials, machinery, fixtures or other things towards the building, construction or equipment of any railroad, or to facilitate the operation of any railroad, whether completed or not, and every person who performs work of any kind in the construction or repair of any railroad, whether under contract with the railroad or with a contractor or sub-contractor thereof, and every person who furnishes any board, provisions or supplies for any employees, or teams of any railroad employed in the construction or repair thereof with the consent or authority of the person authorized to make such construction or repair; *and every person who shall sustain loss or damage to person or property from any railroad for which a liability may exist at law,* and every person who performs any valuable services, manual or professional, for any railroad by or from which such railroad receives a benefit, shall have a lien on said railroad for said labor, materials, machinery, fixtures, board, provisions, supplies, loss, damage and services upon the road-bed, buildings, equipments, income, franchise, right-of-way, and all other appurtenances of said railroad superior and paramount, whether prior in time or not, to that of all persons interested in said railroad as managers, lessees, mortgagees, trustees and beneficiaries under trusts or owners.'
"Sec. 2. That section 6252 of Sandels & Hill's Digest be amended so as to read as follows: 'The lien mentioned in the preceding section shall not be effectual unless suit shall be brought on the claim, or the claim shall be filed by order of court with the receiver of said railroad within one year after said claim shall have accrued.'
"Sec. 3. That section 6253 of Sandels & Hill's Digest be amended so as to read as follows: 'The said lien shall be mentioned in the judgment rendered for claimant in the ordinary suit for the claim, or in any order of court allowing such claim as a just charge against any railroad in the hands of a receiver, and said lien may be enforced by ordinary levy and sale under final or other process at law or equity.'

"Sec. 4. All laws in conflict with this act are hereby repealed, and this act shall be in force from and after its passage." Acts 1899, pp. 145, 146.

The first question, therefore, which arises, is whether or not the act of March 31, 1899, supra, section 4 of which has a repealing clause of all laws in conflict therewith, had the effect to take away from the interveners the benefits of the provisions of the act of March 19, 1887, supra. I have concluded that this question must be answered in the negative, for two reasons:

(1) The act of March 31, 1899, is not in conflict with the act of March 19, 1887. On the contrary, manifestly it was the purpose of the legislature in the enactment of the act of March 31, 1899, to give benefits to other classes of persons than those which were embraced in the act of March 19, 1887, and not to take away from any class of persons named in the act of March 19, 1887, the benefits of any of the provisions of that act. The parts of the two statutes which are in italics, and which cover the rights of the interveners in this case, are precisely the same; and therefore the act of March 31, 1899, in so far as it re-enacts the statute of March 19, 1887, is only a continuation of the latter act, and does not operate to repeal it at all, so far as the rights of the interveners' are concerned. In Suth. St. Const. § 137, the author says, on page 177:

"Thus amendment is frequently made by enacting that a certain section shall be so amended as 'to read as follows'; then inserting the substituted provision entire, without specification of the change. The parts of the former law left out are repealed. This intention is manifest. There is a negative necessarily implied, that such eliminated portion shall no longer be in force. The re-enacted portions are continuations, and have force from their original enactment."

Moore v. Mausert, 49 N. Y. 332; People v. Board of Sup'rs of Montgomery Co., 67 N. Y. 109, 23 Am. Rep. 94; Goodno v. City of Oshkosh, 31 Wis. 129; State v. Ingersoll, 17 Wis. 631; Longlois v. Longlois, 48 Ind. 60.

(2) The act of March 19, 1887, was in full force and effect when the interveners sustained the loss on which their intervention is based. They, therefore, had acquired a vested right under the statute of March 19, 1887, and the legislature was without power to devest it. In Suth. St. Const. § 164, the author says:

"When a right has arisen on a contract, or a transaction in the nature of a contract, authorized by statute, and has been so far perfected that nothing remains to be done by the party asserting such right, the repeal of the statute will not affect it, or an action for its enforcement. It has become a vested right, which stands independently of the statute. A contractor for grading streets was authorized by the existing law to sue delinquent abutters for unpaid assessments. This right of action was held a part of the contract, and not taken away by repeal of the law creating it. Causes of action barred by the statute of limitations are not revived by a repeal of the statute. The repeal of a statute giving a lien for advances of money for certain purposes will not affect the lien as to such advances as were made prior thereto. Rights that pass and become vested under the existing law are supposed to be beyond the control of the state through its legislature. A mere change of the law does not devest or impair rights of property acquired previously, even though the legislature intended the new law so to operate. A law can be repealed by the lawgiver, but the rights which have been acquired under it while it was in force do not thereby cease. It would be an act of absolute

injustice to abolish, with a law, all the effects which it had produced. This is a principle of general jurisprudence. But a right, to be within its protection, must be a vested right. It must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoy-ment of property, or a legal exemption from a demand made by another."

The cotton for the loss of which the judgment in this case was recovered was destroyed, and the suit for its recovery begun, before the statute of March 31, 1899, was enacted. The right of action to recover for the loss of the cotton was not dependent on the statute of March 19, 1887, but the lien in favor of the interveners on the road, equipments, etc., was given by that statute; and the right to enforce the lien accrued when the loss occurred, and was a vested right, which the legislature could not take away. It might have repealed the remedy it had prescribed for the enforcement of the lien, but the lien itself was expressly given by the statute, and was as sacred as if it had been acquired by an express contract. It stands on the very same footing as if the suit had been brought by a mechanic to enforce his statutory lien under the same act for material furnished or labor performed, instead of for cotton lost or destroyed by fire by the carelessness or negligence of the company.

The interveners are entitled to have the judgment paid by the Kansas City Southern Railway Company, and it is so ordered.