(No. 6083. May 17, 1934.)

FRANK STEWARD, Receiver of the Property of E. C. KING, Appellant, v. PARLEY NELSON and SARAH NELSON, His Wife, and Others, Respondents.

[32 Pac. (2d) 843.]

438

Lewis A. Lee, for Appellant.

Chas. W. Poole, for Respondents.

BUDGE, C. J.—W. Lloyd Adams and his wife, on December 15, 1916, and January 29, 1918, respectively, executed two notes for $1400 and $400, payable to Ross J. Comstock, and to secure the payment thereof gave to Comstock two mortgages of even dates with said notes. After execution, both the mortgages and notes were assigned by the mortgagee, Comstock, to one Royal Garn, and thereafter by Garn to E. A. King. After the assignment to Garn, and on May 16, 1918, the mortgagors, Adams and wife, sold the premises under a written agreement to Parley Nelson, the agreement providing that Parley Nelson assumed and agreed "to pay one certain mortgage against said property in the sum of $1800.00 payable to Royal Garn." The only amounts payable to Garn and the only mortgages on the premises were the two involved herein, aggregating $1800, and the court found that Nelson had assumed the payment of these mortgages. After purchasing the property Nelson made certain payments of interest to Comstock for Royal Garn, and, after the assignment to E. A. King, made payments of interest to him, the last payment being made May 20, 1929, twelve days before the act herein involved became effective. Nelson also wrote certain letters to King which might be taken as evidentiary of his acknowledgment of the amount due under the mortgages. On October 3, 1932, appellant, receiver of the property of E. A. King, instituted suit seeking foreclosure of the mortgages. The answer of respondent,

*inter alia,* pleaded the defense that the causes of action in appellant's first and second causes of action were barred by the provisions of I. C. A., sections 44–1102 and 44–1103 (chap. 56, 1929 Session Laws of Idaho). There was no "agreement of record" extending the date of payment. The notes upon their faces showed the date of maturity of the obligations or indebtednesses secured or evidenced by the mortgages to be December 15, 1920. The fifth conclusion of law of the court recites:

"That by the provisions of Chapter 56, of the 1929 Session Laws of the State of Idaho, being sections 44–1102 and 44–1103 of the Idaho Code Annotated, the action to foreclose said mortgages is barred, and the plaintiff is not entitled to maintain this action for the foreclosure of said mortgages or either of them."

Judgment was entered in favor of respondents and the action was dismissed. This appeal is taken from the judgment.

Appellant's five assignments of error all directly relate to the foregoing conclusion of law, the assignments being briefly that the court erred in failing to find that: (1) I. C. A., sections 44–1102 and 44–1103, are unconstitutional in so far as they relate to or affect the notes and mortgages involved; (2) that they impair the obligation of the contracts under consideration, in violation of the guarantee of article 1, section 10, Constitution of the United States, and article 1, section 16, Constitution of Idaho; (3) that the above-mentioned statutes violated the rights guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States and section 13, article 1, of the Constitution of Idaho; and in finding, (4) that the action to foreclose said mortgages is barred; and, (5) in rendering judgment of dismissal, and failing to enter judgment in favor of appellant and against all defendants. In other words, the question is: Are I. C. A., sections 44–1102 and 44–1103, unconstitutional in so far as they relate to the mortgages involved herein?

The discussion by the parties deals mainly with the question of whether the statutes referred to above constitute an impairment of the obligations of the contracts, within the meaning of article 1, section 10, of the Constitution of the United States and article 1, section 16, of the Constitution of Idaho. It is well settled that the law existing when a mortgage is made enters into and becomes a part of the contract. (*Fidelity State Bank v. North Fork Highway Dist.*, 35 Ida. 797, 209 Pac. 449, 31 A. L. R. 781; *Edwards v. Kearzey*, 96 U. S. 595, 24 L. ed. 793; *Hooker v. Burr*, 194 U. S. 415, 24 Sup. Ct. 706, 48 L. ed. 1046; *East Tennessee etc. R. Co. v. Frazier*, 139 U. S. 288, 11 Sup. Ct. 517, 35 L. ed. 196.) Under the law as it existed at the time these mortgages were made each note, and the mortgage given to secure the payment of the same, was to be construed as one contract. (*Clark v. Paddock,* 24 Ida. 142, 132 Pac. 795, 46 L. R. A., N. S., 475.) Liability to pay the mortgage debt rested upon the mortgaged lands as well as upon the mortgagor. (*Gerken v. Davidson Grocery Co.*, 50 Ida. 315, 296 Pac. 192.) The mortgages constituted contracts by which specific property,—everything that would pass by a grant or conveyance of the property—was hypothecated for the performance of the act for which they were given to secure. (I. C. A., secs. 44–801 and 44–806.) The life of the mortgages would not cease to exist so long as the notes they secured were actionable, for the reason that the mortgages were incident to the debts. So long as the notes were kept alive, that is actionable, either by writing signed by the party to be charged, or any payment of principal or interest, the lien of the mortgages remained unimpaired for at least five years thereafter. (I. C. A., secs. 5–216 and 5–238; *Moulton v. Williams*, 6 Ida. 424, 55 Pac. 1019; *Kelly v. Leachman*, 3 Ida. (Hasb.) 629, 33 Pac. 44; *Cook v. Stellmon*, 43 Ida. 433, 251 Pac. 957.) In other words, the mortgagee could, under the law as it existed at the time these mortgages were made, enforce the mortgages whenever he could enforce the debts secured by the mortgages.

The 1929 acts of the legislature involved herein provide as follows:

I. C. A., section 44–1102:

"No mortgage or other lien upon real property, now, heretofore, or hereafter given by any person, firm or corporation as security for any obligation or indebtedness shall be a lien or encumbrance on such real property, after the expiration of ten years from the maturity of the obligation or indebtedness secured or evidenced by such mortgage or other lien, or from the date to which the payment thereof has been extended by agreement of record. If the date of the maturity of such obligation or indebtedness is not disclosed by the mortgage or other lien itself, then the date of the execution of such mortgage or other lien shall be deemed the date of maturity of the obligation or indebtedness secured or evidenced thereby."

I. C. A., section 44–1103:

"After ten years have elapsed from the date of the maturity of any mortgage or other lien upon real property as provided in section 44–1102, the lien thereof shall conclusively be presumed to be satisfied and discharged, and no action, suit or other proceeding shall be maintainable for the foreclosure of such mortgage or other lien."

The effect is at once apparent that under the foregoing sections the life of the mortgage is limited, irrespective of the life of the debt it secures. The debt may be actionable, may have been renewed or extended, but not the mortgage. Such is the case herein. By reason of extension of time for payment of the debt the mortgage given to secure the debt may not be subject to foreclosure for a period, yet, during the interim of such extension the mortgage may cease to exist and the lien or incumbrance of the mortgage on the real property, the security, be destroyed. In the instant case these sections, if upheld, in effect take away the remedy of foreclosure provided by I. C. A., section 9–101, and leaves no remedy of equal or similar value in place thereof. To first look to the mortgaged property for payment of the debt the mortgages were given to secure was not only a remedy, but was a valuable right. In effect,

the lien or incumbrance of the mortgage was destroyed in the instant case, the continuing right to such lien as long as the debt remained actionable no doubt being the prevailing consideration for the contracts in so far as the mortgagee was concerned.

While a distinction has been drawn between laws regulating rights of parties, and such as apply only to the remedy, this doctrine is subject to the limitation that a remedy must remain which is complete and which secures all the substantial rights of the parties, and the rule thus evolves that any law which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution. (*Brine v. Hartford Fire Ins. Co.*, 96 U. S. 627, 24 L. ed. 858.) This court in considering the provisions of section 10, article 1, of the United States Constitution, providing: "No state shall . . . . pass any . . . . law impairing the obligation of contracts . . . .." and Idaho Constitution, article 1, section 16, providing: "No . . . . law impairing the obligation of contract shall ever be passed.", in *Fidelity State Bank v. North Fork Highway Dist., supra*, said:

"What constitutes the impairment of a contract is stated in 12 C. J., p. 1056, par. 699, as follows:

" 'Any enactment of a legislative character is said to "impair" the obligation of a contract which attempts to take from a party a right to which he is entitled by its terms, or which deprives him of the means of enforcing such a right.' . . . .

"While the remedy may be modified at the discretion of the legislative body, it cannot be taken away, for the right to property necessarily implies a right to process of law to protect it. The remedy to enforce a contract is a part of the contract, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the constitution, and is therefore void. (*Edwards v. Kearzey*, 96 U. S. 595, 24 L. ed. 793.) "

In *Edwards v. Kearzey, supra,* in arriving at the conclusion that the remedy subsisting when a contract is made is a part of its obligation, and that any subsequent law of the state which so affects it as substantially to impair and lessen the value of the contract, is forbidden by the Constitution and is void, the United States supreme court said:

"The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceased to be, and falls into the class of those 'imperfect obligations,' as they are termed, which depend for their fulfillment upon the will and conscience of those upon whom they rest. The ideas of right and remedy are inseparable. 'Want of right and want of remedy are the same thing.' . . . .

"It is also the settled doctrine of this court, that the laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This rule embraces alike those which affect its validity, construction, discharge and enforcement. (*Von Hoffman v. Quincy,* [4 Wall. 535, 18 L. ed. 403], (*supra*) ; *McCracken v. Hayward,* 2 How. 608, 11 L. ed. 397.)

"In *Green v. Biddle,* 8 Wheat. 1, 5 L. ed. 547, this court said, touching the point here under consideration: 'It is no answer, that the Acts of Kentucky now in question are regulations of the remedy, and not of the right to the lands. If these Acts so change the nature and extent of existing remedies as materially to impair the rights and interest of the owner, they are just as much a violation of the compact as if they overturned his rights and interests.'

" 'One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not by the Constitution to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation—dispensing with any part of its force.' (*Planters' Bank v. Sharp,* 6 How. 301, 12 L. ed. 447.)

"The obligation of the contract between the parties, in this case, was to perform the promises and undertakings contained therein; the right of the plaintiff was to damages for the breach thereof, to bring suit and obtain a judgment, to take out and prosecute an execution against the defendant till the judgment was satisfied, pursuant to the existing laws of Illinois. These laws giving these rights were as perfectly binding on the defendant, and as much a part of the contract, as if they had been set forth in its stipulations in the very words of the law relating to jv 'gments and executions. If the defendant had made such an agreement as to authorize a sale of his property, which should be levied on by the sheriff, for such a price as should be bid for it at a fair public sale on reasonable notice, it would have conferred a right on the plaintiff, which the Constitution made inviolable; and it can make no difference whether such right is conferred by the terms of the law or the contract. Any subsequent law which denies, obstructs, or impairs this right, by superadding a condition that there shall be no sale for any sum less than the value of the property levied on, to be ascertained by appraisement, or any other mode of valuation than a public sale, affects the obligation of the contract, as much in the one case as the other, for it can be enforced only by a sale of the defendant's property, and the prevention of such sale is the denial of a right." (*McCracken v. Hayward,* 2 How. 608, 11 L. ed. 397.)

The following authorities state like rules: 3 Jones on Mortgages, 8th ed., sec. 1694; *Clark v. Reyburn,* 8 Wall. 318, 19 L. ed. 354; *Howard v. Bugbee,* 24 How. (65 U. S.) 461, 16 L. ed. 753; *Giles v. Stanton,* 86 Tex. 620, 26 S. W. 615; *Crowther v. Fidelity Ins. Trust & Safe-Deposit Co.,* 85 Fed. 41; *Merchants' Bank v. Ballou,* 98 Va. 112, 32 S. E. 481, 81 Am. St. Rep. 715, 44 L. R. A. 306; *State Trust Co. v. Kansas City etc. R. Co.,* 115 Fed. 367.

The only attempted saving clause contained in the 1929 act of the legislature is that portion of I. C. A., section 44–1102, providing: "No mortgage .... shall be a lien or encumbrance .... after the expiration of ten years

from the maturity of the obligation or indebtedness secured
. . . . *or from the date to which the payment thereof has*
been extended by agreement of record.'' (Italics ours.)
Under the law as it existed when the mortgages involved
herein were executed an acknowledgment, contained in some
writing, signed by the party to be charged had the effect
''to 'take the case out of the operation' of our limitation
statutes, and start anew the running of the bar of the stat-
ute.'' (*Moulton v. Williams, supra.*) And, in the latter
case it was also said:

''The indorsement on the note in question did not create
any new obligation on the part of the debtor, but it took
the case out of the operation of the statute, or removed
the bar of the statute up to the making of same; in other
words, it affected not the debt, but the remedy thereon.
What is said in regard to the principal obligation is also
applicable to the mortgage.''

The effect of the new act is that the bar of the statute
relating to time of foreclosure of the mortgage can only be
removed by an agreement of record, removal of the bar of
the statute as to the debt by other appropriate means is not
enough. In a similar situation the supreme court of Mon-
tana in *Wilson v. Pickering,* 28 Mont. 435, 72 Pac. 821, said:

''Counsel for respondent contends that the provisions of
section 3842 of the Civil Code apply to this case. That sec-
tion provides that a mortgage 'can be created, renewed or
extended ''only by writing'' with the formalities required
in the case of a grant of real property.' This statute is
direct and certain, and admits of but one interpretation. A
mortgage lien since its approval cannot be created, renewed,
or extended in contravention of its provisions. *Wells v.
Harter,* 56 Cal. 342; *London & S. F. Bank v. Bandmann,*
120 Cal. 220, 52 Pac. 583, 65 Am. St. 179. This statute,
however, did not take effect or become law until July 1,
1895, while the last renewal of the note in the case before
us was executed February 8, 1890. If at the last-mentioned
date the renewal of a note as a matter of law, extended or
renewed a mortgage lien given to secure the indebtedness

evidenced by the former note, such extension or renewal became and was, at the time of the enactment of section 3842, *supra,* a valid, subsisting contract, and the Legislature could not impair its obligation by an enactment subsequent to the execution of such contract. (Cooley, Const. Lim., 6th ed., 328.) And, if a renewal of the note did not toll the statute of limitation, the plaintiff's right of action was barred thereby, June 11, 1892, six years from the date when the first note became due. In either event, the section above quoted can have no application to the facts of this case.''

■ I. C. A., sections 44–1102 and 44–1103, constitute such an impairment of the obligation of the contracts involved herein as to bring them within the inhibition of section 10, article 1 of the Constitution of the United States and section 16, article 1, of the Constitution of Idaho, and the statutes are therefore unconstitutional in so far as they are sought to apply to these particular contracts.

The foregoing conclusion makes it unnecessary to consider the remaining assignments of error.

The judgment is reversed with instructions to the trial court to proceed in accordance with the views herein expressed.

Givens, Morgan, Holden and Wernette, JJ., concur.