864 P.2d 132

Jeff D. CURR, Claimant,

v.

Scott D. CURR dba Sequoia Builders, Employer, and West American Insurance Company, Surety, Defendants.

Ronald L. SWAFFORD, Real Party In Interest–Appellant,

v.

INDUSTRIAL COMMISSION, State of Idaho, Real Party In Interest–Respondent.

Kerri Sinclair ROMER, Claimant,

v.

VENEER SLICING SYSTEMS, INC., Employer, and Argonaut N.W. Insurance Co., Surety, Defendants.

Byron K. MEREDITH, Real Party In Interest–Appellant,

v.

INDUSTRIAL COMMISSION, State of Idaho, Respondent.

Kelly ASKEW, Claimant,

v.

ARLO G. LOTT TRUCKING, Employer, and Industrial Indemnity Company, Surety, Defendants.

L. Clyel BERRY, Real Party In Interest–Appellant,

v.

INDUSTRIAL COMMISSION, State of Idaho, Real Party In Interest–Respondent.

Sally Elizabeth FAHRENWALD, Claimant,

v.

FISH BREEDERS OF IDAHO, INC., Employer, and Argonaut Northwest Insurance Company, Surety, Defendants.

Kenneth D. FAHRENWALD, Claimant,

v.

AMBROSE–MONTANA EXPRESS, INC., Employer, and Liberty Northwest Insurance Corporation, Surety, Defendants.

Breck SEINIGER, Real Party In Interest–Appellant,

v.

INDUSTRIAL COMMISSION, State of Idaho, Real Party In Interest–Respondent.

Nos. 19473, 19944, 20032 and 20124.

Supreme Court of Idaho, Boise, February 1993 Term.

Nov. 18, 1993.

Swafford Law Office, Chtd., Idaho Falls, for appellant Swafford. Ronald L. Swafford, argued.

L. Clyel Berry, Twin Falls, for appellant Berry.

Byron Meredith, Nampa, for appellant Meredith.

Seiniger, Nevin, Kofoed & Herzfeld, Boise, for appellant Seiniger. Wm. Breck Seiniger, Jr., argued.

Larry EchoHawk, Atty. Gen. and David G. High, Deputy Atty. Gen., Boise, for respondent.

McDEVITT, Chief Justice.

## STATEMENT OF THE CASE

### SWAFFORD CASE

Claimant, Jeff Curr ("Curr"), suffered an employment-related back injury on May 5, 1989. West American Insurance Company ("West"), the employer's workers' compensation surety, assumed liability on the claim and paid temporary disability benefits to Curr from May 6, 1989, to January 11, 1990. Curr also received temporary total disability benefits from October 30, 1990, through November 26, 1990, after he was admitted to the hospital for a second operation on his back.

On August 18, 1989, Curr retained Ronald L. Swafford ("Swafford"), complaining of inadequate temporary total disability payments and problems with the surety. A written contingency fee agreement was entered into between Swafford and Curr, wherein Swafford was to receive 33⅓% of any award recovered if the matter was litigated, and 25% of any award if the matter was resolved without litigation.

On May 14, 1991, a lump sum settlement agreement was entered into between Curr and West, wherein Curr was to receive $30,000.00, in addition to the medical bills already paid by West. Under the lump sum agreement, Curr received $11,641.62 in temporary total disability compensation, and $15,988.50 in permanent partial disability compensation established from an impairment rating of 18% of the whole person. Curr received additional consideration in the amount of $23,484.86. The settlement agreement stated that the additional consideration was paid to cover "disputed compensation benefits of any nature, accrued and future, outstanding and future medicals and retraining." From this total, deductions of $11,641.62 and $9,473.36 were taken for payments already paid by West in temporary total disability and permanent partial disability compensation respectively, leaving a net balance of $30,000.00.

The lump sum agreement was submitted to the Idaho Industrial Commission ("Commission") for approval. Also at that time, Swafford requested the Commission's approval of $7,500.00 in attorney fees, and $300.00 for reimbursement of costs. Swafford calculated his fee based on 25% of the $30,000.00 paid to Curr. The Commission approved the lump sum agreement and granted an order of discharge, but refused to approve the attorney fee agreement. After conducting a hearing on the matter, the Commission determined that Swafford was only entitled to $5,871.22 in attorney fees, or 25% of the $23,484.86 "additional compensation" portion of the lump sum agreement. The Commission's decision was based in part on a finding that it was inappropriate in this case to calculate attorney fees on any portion of the permanent impairment rating because "[t]here is no indication that the 18% impairment rating was due to efforts on the part of Mr. Swafford."

The Commission filed its "Order Fixing Attorney Fees" on June 18, 1991. On August 20, 1991, the Commission filed findings of fact and conclusions of law in supplementation of that order. Swafford now appeals.

### MEREDITH CASE

On February 7, 1991, Kerri S. Romer ("Romer") retained the services of Byron K. Meredith ("Meredith") to handle her workers' compensation claim. At that time, Romer's employer and surety refused to pay Romer any compensation for treatment of carpal tunnel syndrome, an employment-related affliction, arguing that Romer was not entitled to any more temporary disability benefits, that she could return to her normal job duties, that she was medically stable, and that she had no permanent impairment. The contingency fee agreement between Romer and Meredith provided for a fee of 33⅓ of all monies

recovered from any settlement effected after the filing of a lawsuit.

On July 25, 1991, Meredith applied for and obtained a hearing before the referee to reinstate the temporary disability benefits that the surety discontinued. At the hearing the referee determined that Romer was not medically stable. On January 15, 1992, the Commission ordered the employer to pay additional temporary disability benefits to Romer, and awarded attorney fees against the employer based upon unreasonable discontinuance of the benefits.

On December 30, 1991, Romer's physician, Dr. Botimer, issued a permanent impairment rating. Shortly thereafter, the parties agreed to a lump sum settlement of $25,000.00 prior to any ruling from the Commission on the amount of attorney fees to be awarded. The settlement covered the temporary disability award and attorney fee award. The Commission reduced the contingency fee agreement from 33⅓% to 25% of all monies above the temporary disability benefit award, finding the 33⅓% fee to be unreasonable. The Commission allegedly based the 25% fee upon the "customary" fees of the industry. Meredith now appeals.

## SEINIGER CASE

Ken Fahrenwald and Sally Fahrenwald, both employed by the same company, were injured in separate accidents on the job. The employer/surety refused workers' compensation benefits to both claimants. Claimants retained Breck Seiniger ("Seiniger") to help them recover benefits wrongfully denied them. Claimants and counsel entered into contingency fee agreements providing that counsel would receive one-third of any amounts recovered after filing an application for hearing but before appeal. Application for hearing was filed in both cases and a hearing was held in the case of Ken Fahrenwald, but not in the case of Sally Fahrenwald. Subsequent to the submission of lump sum settlement agreements in both cases, the Commission, on its own motion, advised the attorney that the fees agreed to between the claimants and counsel would not be approved.

Counsel testified at a subsequent hearing concerning the amount of work he put into the cases and the value of his services. His uncontroverted testimony estimated that the fee agreement was approximately one-third of what he would have charged if the case had been accepted on an hourly basis. The Commission thereafter refused to approve the fee agreement without providing the Fahrenwalds and/or their counsel with a statement of reasons for doing so, and arbitrarily set its own fee arrangement, never expressly finding the original agreement to be unreasonable. Seiniger now appeals.

## BERRY CASE

On June 30, 1987, claimant Kelly Askew ("Askew") suffered a work-related back injury during the course of her employment with defendant-employer. She was treated at the expense of the defendant-surety, and released by January 8, 1988, with a one month check-up scheduled. Askew never made the check-up appointment. Askew subsequently injured her back in January 1989, during her employment with another employer in Nevada. On August 20, 1990, she returned to Idaho. At this time, she sought the defendant-surety's permission to have her back reexamined by the same doctor that treated her in 1987. When the request was denied, Askew retained the services of L. Clyel Berry ("Berry"). Berry obtained authority from the surety for the reexamination. When the surety denied the doctor's request for an MRI, Berry filed an application for hearing. After preliminary discovery, the surety authorized the MRI. As a result of the MRI obtained by Berry, the doctor recommended that claimant finalize her claim, stating that she was stabilized and giving her an impairment rating. Berry negotiated a settlement in the amount of $5,370.00 on Askew's behalf.

Berry's contingency fee agreement with claimant provided for attorney fees in the amount of 33⅓% of benefits obtained plus reimbursement of costs incurred during the representation of claimant. Following submission of the lump sum agreement to the Commission, Berry was advised that the

Commission would not approve attorney fees at the 33⅓% rate, and would only approve fees at a 25% rate. The Commission did not specifically find the fee agreement to be unreasonable. It simply ruled that a fee of 25% was reasonable and appropriate. Berry now appeals.

This Court must address the following issues:

I. Whether the Commission's findings concerning proper attorney fees are supported by substantial competent evidence.

II. Whether appellants are entitled to attorney fees on appeal.

## STANDARD OF REVIEW

This Court's review on appeal from an Industrial Commission decision is limited to questions of law, and an ascertainment as to whether the Commission's factual findings are based on substantial competent evidence. I.C. § 72–732(1); *Loya v. J.R. Simplot Co.,* 120 Idaho 62, 63, 813 P.2d 873, 874 (1991); *Bint v. Creative Forest Prods.,* 108 Idaho 116, 119, 697 P.2d 818, 821 (1985).

## ANALYSIS

### I.

### THE FEE AGREEMENT MODIFICATIONS

██ The Commission has no jurisdiction other than that which the legislature has specifically granted to it. The Commission therefore exercises limited jurisdiction, with nothing being presumed in favor of its jurisdiction. *See Idaho Power Co. v. Idaho Pub. Util. Comm'n,* 102 Idaho 744, 750, 639 P.2d 442, 448 (1981) (jurisdiction of Public Utilities Commission limited).

██ In *Brannon v. Pike,* 112 Idaho 938, 939, 737 P.2d 459, 460 (1987), this Court stated that I.C. § 72–803, together with I.C. §§ 72–804 and 72–210, "evince a general legislative scheme whereby attorney fee issues closely related to the substance of the workers' compensation claims are to be resolved by the Industrial Commission."

Under I.C. § 72–803, the Commission has a duty to approve or disapprove attorney fee claims. The basis for approval depends upon a finding that the fee agreement sails the wake of reasonableness. Reasonableness, in turn, derives from the totality of the circumstances from the perspective of the parties at the time that the fee agreement was made. Two cases, *Hogaboom v. Economy Mattress,* 107 Idaho 13, 684 P.2d 990 (1984), and *Clark v. Sage,* 102 Idaho 261, 629 P.2d 657 (1981), offer helpful, but not determinative, factors to be thoughtfully considered when ascertaining reasonableness.

This Court must review the four individual fee agreement modifications to discern whether the Commission's actions are supported by substantial competent evidence.

### *SWAFFORD CASE*

Idaho Code § 72–707 provides that the Commission shall determine all unsettled questions arising under the Workers' Compensation Law. When issues in a case cannot be resolved by prehearing conferences or otherwise, the Commission must hold a hearing to determine the issues. I.C. § 72–712. Decisions and orders of the Commission entered at the conclusion of such hearings and entered upon approval of settlement agreements are final and conclusive as to all matters adjudicated. I.C. § 72–718. This Court has jurisdiction to review the orders of the Commission pursuant to I.C. § 72–724. To properly review an order of the Commission under the appropriate standard of review, it is essential that the order of the Commission be based upon reviewable findings of fact and conclusions of law. *Iverson v. Farming,* 103 Idaho 527, 530, 650 P.2d 669, 672 (1982).

██ In this case, the Commission's order fixing "reasonable" attorney fees was not supported by the necessary findings of fact. The order was issued June 18, 1991. The supplemental Findings of Fact and Conclusions of Law was issued only after the appeal was lodged in this Court on August 20, 1991. To abide the notion that the Commission's order was *based* upon reasoned findings of fact would be treach-

erous to say the least. The findings were generated after the order in an attempt to justify the earlier conclusions. Findings which are created after a decision has been made and entered are not the "findings" contemplated by our decisions. The Commission's order reducing Swafford's contingency fee is accordingly vacated, and the case remanded to the Commission for proceedings consistent with this opinion.

Appellant Swafford, along with appellants Seiniger and Berry, also disputes the statutory and constitutional authority of the Commission to *sua sponte* effect fee restrictions, as well as questions the lack of procedural safeguards to guide such authority. In particular, the three appellants collectively challenge the manner in which the fee modifications occurred, asserting that the Commission's arbitrary acts violated the Due Process, Equal Protection, and Contracts clauses of the United States Constitution.

■ In effecting the attorney fee modifications under the claimed authority of I.C. § 72–803 where there is no fee dispute, the Commission is acting in its quasi-legislative as opposed to its quasi-judicial capacity. The Commission must accordingly act within the bounds of its legislatively delegated authority and of the omnipresent mantle of the United States Constitution. In *sua sponte* modifying appellants' uncontested attorney fees absent the guidelines of a properly enacted regulatory scheme, the Commission infracted both perimeters.

### A. Statutory Authority

■ As a creature of legislative invention, the Commission may only act pursuant to an enumerated power, whether it be directly statutory or based upon rules and regulations properly issued by the Commission under I.C. § 72–508.[1] In *sua sponte* modifying appellants' uncontested attorney

fee agreements, it is clear that the Commission did not act pursuant to any statutory or enumerated regulatory authority. The only written guidelines in existence at the time the appellants' fee agreement modifications were issued and upon which the Commission's actions rely was Idaho Administrative Rule 72–803.2, published in January 1990 entitled a "letter of understanding."[2] The "letter" capped plaintiff's attorney fees at 25% of new money only or 33⅓% if the case was litigated. This "letter of understanding" was not promulgated in compliance with the Administrative Procedures Act (Idaho Code Chapter 52 Title 67) and thus lends no support to the Commission's claimed authority to unilaterally act upon the fee agreements. In acting beyond the bounds of its statutory authority the Commission has acted arbitrarily and capriciously and has manifestly abused its discretion. These abuses have bred discomfort and uncertainty in appellants and other attorneys. Without clear guidelines nestled in appropriately promulgated regulations, attorneys' actions are plagued by doubt, which may have a chilling effect on the underlying purpose of the Workers' Compensation Act that the Commission is constrained to promote under I.C. § 72–508.

### B. Constitutional Authority

■ The Commission's procedural misconduct is compounded by constitutional transgressions. The Commission has waded into regulatory conduct with indifference to constitutional requirements that adhere to rights fixed by a private contract. An attorney fee agreement constitutes a valid contract under Idaho law, and appellants performed services for their clients in reliance on the terms of the fee agreements. It is clear that, in Idaho, parties to a contract have a property interest in the subject matter of the contract that is pro-

---

1. Idaho Code § 72–508 enables the Commission to issue rules and regulations necessary to accomplish the purposes of the Workers' Compensation Act. The underlying purpose of the Workers' Compensation Act is stated in I.C. § 72–201 to provide "sure and certain relief for injured workmen and their families...."

2. In the cases of Meredith and Berry, the "letter of understanding" was published before their attorney fee agreements were made. In the cases of Swafford and Seiniger, the "letter of understanding" was not published until after their attorney fee agreements were entered into.

tectable both under the Contract Clause[3] and the Due Process Clause of the United States Constitution. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); *Application of Forde L. Johnson Oil Co.,* 84 Idaho 288, 372 P.2d 135 (1962). In addition, the right to follow a recognized and useful occupation is protected by a constitutional guarantee of liberty under the Fourteenth Amendment to the U.S. Constitution and Idaho Const. art. 1, § 13. *Jones v. State Bd. of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976); *State v. Armstrong,* 38 Idaho 493, 225 P. 491 (1923).

■ In order to justifiably modify attorney fee agreements in the interest of public welfare, the Commission must afford due process to the contracting parties, i.e., notice and an opportunity to be heard at a meaningful time. *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493. The notice requirement mandates meaningful notification of the regulations to be imposed. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. This means, at a minimum, that the Commission must give notice of the purpose of the hearing, must have clearly articulated evidentiary standards that will be used at the hearing, assign the burden of proof and level of proof, and formally publish clear guidelines upon which it will base the fee modifications in order to eliminate any latent arbitrariness. The "meaningful hearing" component of the due process requirement insures the attorney the opportunity to influence the discretion of the decision-maker by presenting his or her reasons "why the proposed action should not be taken" *before* the Commission makes the decision to modify the fee agreement. *Id.* See also, *Arnzen v. State,* 123 Idaho 899, 854 P.2d 242 (1993).

In *sua sponte* reducing appellants' uncontested attorney fee agreements without the suitable advance notice to all of the parties directly involved, accomplished through properly enacted regulations, and without a meaningful hearing, the Commission has acted in disregard of important constitutional mandates. Specifically, the Commission's current stance, as Seiniger aptly points out, fails to compensate an attorney for acting solely as a counselor and fails to recognize efforts that do not generate monetary awards such as obtaining permission for medical care or procuring an impairment rating. Moreover, the Commission's arbitrary actions made suspect appellants' integrity in the eyes of their clients, thereby seriously undermining the attorney-client relationship. Finally, the "new money" provision preempts representation other than in disputed matters once again contravening I.C. § 72–508. The net result of the Commission's *sua sponte* conduct is a deprivation of appellants' property rights under the fee agreement without due process of law.

## MEREDITH CASE

■ In the absence of formally enacted regulatory guidelines defining the reasonableness of attorney fees sufficient to provide adequate notice to attorneys, there is not substantial competent evidence to support the Commission's finding that the 33⅓ % fee agreement was unreasonably high. The lump sum settlement was effected only after a favorable decision was rendered for the claimant at the July 25, 1991 hearing. The issue of permanent impairment was clearly not resolved prior to the enlistment of Meredith's efforts. When viewed from a perspective wanting the benefit of hindsight as required by *Clark,* the fee agreement of 33⅓% was reasonable. *Clark,* 102 Idaho at 264, 629 P.2d at 660. There was a

---

3. In *Steward v. Nelson,* 54 Idaho 437, 32 P.2d 843 (1934), this Court, in considering the provisions of the United States Constitution art. 1, § 10, providing that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts...." and Idaho Const. art. 1, § 16, providing "[n]o.... law impairing the obligation of contract shall ever be passed[,]" said:

What constitutes the impairment of a contract is.... as follows:

"any enactment of a legislative character is said to 'impair' the obligation of a contract which attempts to take from a party a right to which he is entitled by its terms, or which deprives him of the means of enforcing such a right...."

*Steward,* 54 Idaho at 443, 32 P.2d at 846 (quoting 12 C.J. p. 1056 Par 669).

definite risk of no recovery, as every claim was contested, and Meredith could foresee a significant amount of work brewing. This Court has recognized that a reasonable contingent fee must be "sufficiently high to compensate the lawyer not only for the reasonable value of the time he or she anticipates devoting to the particular lawsuit, but also for the time devoted to other lawsuits undertaken on the same basis but unsuccessful in result." *Clark*, 102 Idaho at 265, 629 P.2d at 661. None of the evidence in this record supports the Commission's finding that the fee agreement was unreasonably high when created or in excess of custom, and, therefore, the finding is vacated and the case remanded.

## SEINIGER AND BERRY CASES

■ Similarly, the facts in both the Seiniger and Berry cases do not support a finding that the fee agreements are unreasonable or that the Commission's substituted fee arrangement is more reasonable. Without properly enacted guidelines it is impossible for the Commission to exercise its duty to approve undisputed attorney fees under I.C. § 72–803. In an effort to support its *sua sponte* reduction of the contingency fee agreements in these two cases, the Commission unsuccessfully attempts to hang its hat on the factors articulated in *Hogaboom* and *Clark*.[4] Although *Hogaboom* and *Clark* provide helpful substantive guidance for the adoption of an implementation regulation under I.C. § 72–

803, the two cases interpret the application of I.C. § 72–804 and are inapposite to a situation arising under I.C. § 72–803, where the Commission dons its quasi-legislative rather than quasi-judicial cloak. Under the provisions of I.C. § 72–803, the Commission has broad discretion to approve fees but must adopt regulations defining the criteria for approval or rejection. Under the terms of I.C. § 72–803, the Commission upon making the threshold determination of unreasonableness *must* fix (approve) attorney fees.

For the foregoing reasons, we hold that the Commission's *sua sponte* reduction of appellants' fees was arbitrary and capricious, and not supported by substantial and competent evidence. We therefore vacate the order and remand the cases for proceedings consistent with this opinion.

## II.

### ATTORNEY FEES ON APPEAL

■ Appellants Swafford, Berry, and Seiniger seek an award of reasonable attorney fees on appeal, but Berry and Seiniger do not assert a specific basis for their claims. Swafford bases his claim upon I.C. §§ 12–120 and 12–121, and upon the private attorney general theory, which provides for attorney fees in cases where a paramount societal interest exists in the matter being litigated. *County of Ada v. Red Steer Drive–Ins of Nevada*, 101 Idaho 94, 609 P.2d 161 (1980). Swafford asserts that he

---

4. *Hogaboom* and *Clark* attempt to structure the analytical process necessary to defining and securing the reasonableness of an attorney fee awarded by the Commission under I.C. § 72–804. The *Clark* court held that reasonableness is derived initially from the attorney-client agreement itself, emphasizing the need to effectuate the intent of the claimant and their attorney. Where the agreement incorporates solely a contingency fee agreement, reasonableness must be evaluated on a contingency fee basis, *i.e.*, prospectively rather than retrospectively. *Clark*, 102 Idaho at 264, 629 P.2d at 660. Reasonableness is based on a balancing of the risk factor with the potential for overreaching. Additional factors to consider include:

(1) [T]he anticipated time and labor required to perform the legal services properly; (2) the novelty and difficulty of the legal issues involved in the matter; (3) the fees customarily

charged for similar legal services; (4) the possible total recovery if successful; (5) the time limitations imposed by the client or circumstances of the case; (6) the nature and length of the attorney-client relationship; (7) the experience, skill and reputation of the attorney; (8) the ability of the client to pay for the legal services to be rendered; and (9) the risk of no recovery.

*Clark*, 102 Idaho at 265, 629 P.2d at 661.

*Hogaboom* recognized two general philosophies for the Commission to consider along with the *Clark* factors. They are to encourage claimants to pursue rightful legal claims and attorneys to take on such claimants' interests. *Hogaboom*, 107 Idaho at 17, 684 P.2d at 994. The Court acknowledged that the fee must be kept reasonably high, at least at market value, to promote these underlying philosophies. *Id.*

**694**

brought this appeal in order to correct inequities and injustice in the workers' compensation area with regard to compensation for services rendered to injured workers and their families, and that the rights and welfare of the injured workers and their families are of paramount societal interest and importance.

Idaho Appellate Rule 35(a)(5) requires a statement of the basis for the claim for attorney fees on appeal to be included in the claimant's brief. This is necessary in order to allow the responding party a due process opportunity to challenge such claims. Thus, the claims of Seiniger and Berry are denied. As to appellant Swafford's claim, this Court has held that statutes and court rules providing for attorney fees in civil actions do not provide a basis for attorney fee awards in workers' compensation appeals. *Swanson v. Kraft,* 116 Idaho 315, 775 P.2d 629 (1989). This is because I.C. § 72–201 abolished all civil actions and civil causes of action for personal injuries in cases covered by the workers' compensation system. Even if the private attorney general theory were to be extended to workers' compensation appeals, this would not be an appropriate case for an award under that theory because *Swanson* limits the award of attorney fees under I.C. § 72–804, as available only against an employer, not against the Commission.

Costs to appellants.

BISTLINE, JOHNSON and TROUT, JJ., and WALTERS, J. Pro Tem., concur.