137 P.3d 417

**Leanne CHEUNG, Petitioner–Respondent,**

v.

**Raymundo PENA, Respondent–Appellant.**

No. 31371.

Supreme Court of Idaho,
Boise, January 2006 Term.

May 3, 2006.

Rehearing Denied June 29, 2006.

Gardner & Camacho Mendoza, LLP, Boise, for appellant. Natalie C. Mendoza argued.

Ellis, Brown & Sheils Chartered, Boise, for respondent. Allen B. Ellis argued.

BURDICK, Justice.

Attorney Raymundo G. Pena (Pena) appeals to this Court from an Industrial Commission order requiring him to repay the entire sum of attorney fees paid to him by a former client, Respondent Leanne Cheung (Cheung). The Industrial Commission's Order Regarding Declaratory Ruling concluded that Pena had not provided Cheung a fee disclosure statement as required by Commission rules, and ordered Pena to forfeit all

attorney fees disbursed to him in his representation of Cheung. We affirm in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Cheung was driving her automobile between work sites and was rear-ended and seriously injured in an automobile accident. The surety for the other driver offered to settle Cheung's claim, and she consulted with Pena prior to accepting an offer of $25,000. Pena then located medical coverage in Cheung's parents' automobile insurance policy. Pena spoke with a representative of that surety who then issued a check to Pena on Cheung's behalf for $10,000. Although Pena had yet to enter into a fee agreement with Cheung, Pena deducted $3,000 from the settlement check for his services in locating and negotiating the settlement.

Reasoning that Cheung was entitled to workers' compensation benefits arising from the accident because it occurred while she was traveling between work sites, Pena and Cheung decided to pursue a workers' compensation claim. Cheung retained Pena as her attorney by signing an "Agreement to Hire Attorney." This contract provided that Pena would represent Cheung against her employer, Wasatch Electric, in connection with the automobile accident. It also provided that Pena would be paid on a contingency fee basis: 25% for any settlement prior to hearing, 30% of any amount recovered by whatever means, including suit, and 40% of gross recovery after any necessary appeal. This "Agreement to Hire Attorney" is the only written agreement between Cheung and Pena.

Pena then filed a worker's compensation complaint with the Industrial Commission. The case proceeded to hearing, and Pena prevailed. The Commission found that Cheung's injuries resulting from the automobile accident arose out of and in the course of her employment at Wasatch Electric. The Commission determined Cheung suffered permanent partial impairment at twenty-eight percent of the whole person, but it did not award any disability in excess of her impairment rating because of a lack of information on her ability (or inability) to engage in gainful activity. On appeal, this Court affirmed the Commission's decision.[1]

Following this Court's ruling, the workers' compensation surety issued a check in the amount of $6,597.37 for temporary total disability benefits and another check in the amount of $33,341 for permanent partial impairment benefits. Pena had Cheung sign these checks over to him.

Cheung was also awarded medical benefits. Since Cheung had received $25,000.00 from the other driver's surety, the worker's compensation surety had a subrogation interest in that amount. However, Pena negotiated with the workers' compensation surety a reduction in this subrogation interest to $16,750. The surety then issued a check to Pena for Cheung's medical benefits in the amount of $218,757.76 (for a total award of $258,696.13).

Pursuant to the "Agreement to Hire Attorney" Pena disbursed forty percent of Cheung's total award ($103,478.45) to himself as his contingency fee. Although Cheung's total medical bills amounted to $249,979.91, Pena did not immediately pay these from the remaining funds. Instead, he waited some seven months after the receipt of the final check to begin paying Cheung's medical bills. However, since the remaining funds were not adequate to pay Cheung's outstanding medical costs, Pena began negotiating with health care providers to pay, reduce, or write-off medical bills. He also responded to collection actions, applied for county indigent funds to assist paying Cheung's medical expenses and presented Cheung's case to the Idaho Catastrophic Fund (the ICF). At a hearing before the ICF, Pena hired another attorney, Cynthia Woolley, to appear on behalf of Cheung. Woolley's fees for this assistance amounted to $1,417.50. Pena paid this fee from Cheung's remaining funds. However, no written fee agreement or contract was prepared for Woolley's representation, and Cheung was not aware of Woolley's services. In fact, Pena failed to provide Cheung an accounting of the disbursements from the funds for twenty months.

---

1. *Cheung v. Wasatch Elec.,* 136 Idaho 895, 42 P.3d 688 (2002).

Pena was able to reduce Cheung's medical bills by $133,975.78. Although there was no mention in the written contract about a contingent fee for medical bill write down, Pena disbursed to himself another 40% fee on this savings from Cheung's funds, which amounted to $53,590.31. Additionally, Pena took another $6,665.47—which he characterized as an "attorney fee adjustment"—at least in part for the $25,000 settlement between Cheung and the driver's surety that preceded the fee agreement between Pena and Cheung.[2] In total, Pena disbursed $166,734.23 in fees. These "fees" totaled 58.8% of Cheung's total recovery. The remainder was paid to Cheung's medical care providers. Cheung received no money from her workers compensation award.

Cheung filed a Petition for Disbursement of Settlement Monies with the Industrial Commission seeking total forfeiture of all legal fees disbursed to Pena. Cheung asserted she had not received any disbursement of monies recovered by Pena. Pena denied he owed Cheung any funds and asserted that all funds were disbursed in accordance with the "Agreement to Hire Attorney." The Industrial Commission conducted a hearing and both Pena and Cheung presented oral and written evidence. The Industrial Commission then ordered Pena to pay Cheung the entire sum of $166,734.23 taken as attorney fees as a result of having failed to provide Cheung with a disclosure statement required by Commission rules. Pena appeals that order.

## II. STANDARD OF REVIEW

On appeal from a decision by the Industrial Commission, this Court's review is limited to questions of law and the "ascertainment of whether the Commission's factual findings are based on substantial competent evidence." *Swett v. St. Alphonsus Reg'l Med. Ctr.*, 136 Idaho 74, 76, 29 P.3d 385, 387 (2001). This Court exercises free review over questions of law. *Combs v. Kelly Logging*, 115 Idaho 695, 697, 769 P.2d 572, 574 (1989). However, findings of fact supported by substantial competent evidence will not be overturned on appeal. *Id.*

2. The record does not clearly reflect how this

## III. ANALYSIS

In opposition to the Industrial Commission's order, Pena contends the Industrial Commission erred in the application of its fee disclosure requirement and that the Commission failed to consider his arguments regarding quantum meruit. Our analysis begins with consideration of the Commission's disclosure rule.

### A. Disclosure Statements

The Industrial Commission based its order that Pena forfeit all fees he collected from his former client on Pena's failure to provide her with a fee disclosure statement as required by IDAPA rule 17.02.08.033.04 (the disclosure rule). The disclosure rule was created by the Commission under its statutory powers to monitor the appropriateness of fees charged workers' compensation claimants pursuant to I.C. § 72–803. *Rhodes v. Indus. Comm'n*, 125 Idaho 139, 141, 868 P.2d 467, 469 (1993); *see* I.C. § 72–803. In pertinent part the disclosure rule provides:

> Upon retention, the attorney *shall* provide a claimant a copy of a disclosure statement. *No fee* may be taken from a claimant by an attorney on a contingency fee basis unless the claimant acknowledges receipt of the disclosure by signing it. Upon request by the Commission, an attorney shall provide a copy of the signed disclosure statement to the Commission. The terms of the disclosure may be contained in the fee agreement, so long as it contains the text of the numbered paragraphs one (1) and two (2) of the disclosure. A copy of the agreement must be given to the client. The disclosure statement shall be in a format substantially similar to the following:

> \* \* \*

> DISCLOSURE STATEMENT
> 1. In workers' compensation matters, attorney's fees normally do not exceed twenty-five percent (25%) of the benefits your attorney obtains for you in a case in which no hearing on the merits

$6,665.47 fee was calculated.

has been completed. In a case in which a hearing on the merits has been completed, attorney's fees normally do not exceed thirty percent (30%) of the benefits your attorney obtains for you.

2. Depending upon the circumstances of your case, you and your attorney may agree to a higher or lower percentage which would be subject to Commission approval. Further, if you and your attorney have a dispute regarding attorney fees, either of you may petition the Commission to resolve the dispute.

IDAPA 17.02.08.033.04 (emphasis added).

■ Pena maintains it was inappropriate for the Industrial Commission to order him to surrender all of his fees pursuant to the disclosure rule. Pena first argues the rate of compensation called for in the fee agreement between himself and Cheung is reasonable and in compliance with the usual and customary charge in the legal community. The Industrial Commission, however, did not determine the terms of the fee agreement were themselves unreasonable. Instead, the Industrial Commission observed that Pena neglected to provide a disclosure statement to Cheung, and, pursuant to the disclosure rule, ordered a forfeiture of fees. Whether the fee structure outlined in the fee agreement between Pena and Cheung was reasonable and customary has no bearing on the question of whether Pena provided Cheung with the legally required disclosure statement.

■ Next, Pena asserts the disclosure rule consists of vague language and does not outline when complete forfeiture may or may not be applied. This argument is unpersuasive. The rule unambiguously states that "[n]o fee" may be taken absent a disclosure statement containing the specific language given in the rule. In this instance the presence of the word "may" following the command to charge "[n]o fee" does not render the operative language optional or ambiguous. Admitting his fee agreement with Cheung did not contain the actual language required by the rule, Pena nevertheless argues the agreement satisfied the rule because the agreement mentioned fees broadly consistent with the fee levels the rule outlines. The disclosure rule, however, requires the attorney to provide the client with a disclosure containing the specific language in the rule—not simply that the terms of the agreement impose similar fee levels as those noted in the rule. *See* IDAPA 17.02.08.033.04.

Pena next argues that because the Industrial Commission has approved other fee agreements that did not include the required disclosure statements its enforcement of the rule in this instance was arbitrary and capricious and thus an abuse of discretion. *See Curr v. Curr*, 124 Idaho 686, 691, 864 P.2d 132, 137 (1993) (stating that an arbitrary and capricious act by the Industrial Commission amounts to an abuse of the Commission's discretion). It should be noted, however, that fee agreements and disclosure statements are not the same thing. The disclosure rule provides that the mandated disclosure statement *may* be included in a fee agreement, or it may be provided separately, so long as it is provided and it includes the required text. IDAPA 17.02.08.033.04. In other words, disclosure statements are required, but need not be a contained in the fee agreement itself. *Id.* As a result, the Commission's approval of fee agreements that did not themselves include disclosure statements has no bearing on this case. The Industrial Commission determined Pena forfeited his fees not because he failed to include a disclosure statement *with his fee agreement,* but instead because he failed to provide the mandated disclosure statement *entirely.* Moreover, Pena has failed to direct this Court's attention to any case in which the Industrial Commission *considered* the question of disclosure statements. That this case was one of first impression does not render the Industrial Commission's decision arbitrary and capricious.

■ Finally, Pena argues the Industrial Commission's order violated his due process rights under the United States Constitution. Specifically, Pena asserts he was denied his right to notice and an opportunity to be heard because the Commission's rules neglect to provide a clear guideline of what penalty is applied for failure to provide a client with a disclosure statement pursuant to IDAPA 17.02.08.033.04. With respect to

Pena's opportunity to be heard, he concedes the Industrial Commission conducted a full and proper hearing. With respect to notice, the language of the disclosure rule unambiguously states that "[n]o fee" may be collected absent the presentation and signing of a disclosure statement as mandated by the rule. IDAPA 17.02.08.033.04. The meaning of the rule is readily apparent, and the Industrial Commission's interpretation of the rule to permit fee forfeiture is reasonable. We accordingly affirm the Industrial Commission's determination that Pena's failure to comply with the disclosure requirement of IDAPA 17.02.08.033.04 merited the forfeiture of his fees earned in the worker's compensation action.

**B. Scope of the Industrial Commission's Review of Attorney Fees**

▮ The Industrial Commission is empowered by statute to issue rules and regulations necessary to accomplish the purpose of the Worker's Compensation Act, I.C. § 72–508; *Rhodes*, 125 Idaho at 141, 868 P.2d at 469, which is to provide "sure and certain relief for injured workmen and their families and dependents ..." I.C. § 72–201. Idaho Code § 72–803 "grants the Commission the authority to 'approve' claims for attorney fees." *Rhodes*, 125 Idaho at 141, 868 P.2d at 469. As the Commission's authority is a creation of statute, the Commission "may only act pursuant to an enumerated power." *Curr*, 124 Idaho at 691, 864 P.2d at 137. The Industrial Commission's mandate over worker's compensation cases is limited to those claims brought by worker's compensation claimants against employers or an employer's surety. *Owsley v. Idaho Indus. Comm'n*, 141 Idaho 129, 134, 106 P.3d 455, 460 (2005).

The Commission was acting within its powers when it ruled that Pena forfeited his fees earned in the worker's compensation action. *See Rhodes*, 125 Idaho at 141, 868 P.2d at 469. The Commission, however, was acting outside its powers when it ordered Pena to forfeit his fees for services separate from Cheung's claims before the Commission. Included in the Industrial Commission's forfeiture of fees were the $6,665.47 attorney fee adjustment from Cheung's $25,000 settle-

ment between Cheung and the driver's surety, $3000 which was a result of the payment by Cheung's insurance for first party medical coverage as a result of the accident, as well as the $1,417.50 payment of Cynthia Woolley's fees for an appearance on behalf of Cheung for ICF funds. Although those fees were for services connected with the accident that caused Cheung's injuries, they were not incurred as part of Cheung's worker's compensation claim. As a result, consideration of those fees was outside the Industrial Commission's jurisdiction. *See Owsley*, 141 Idaho at 134, 106 P.3d at 460.

**C. Implied Contract Under The Doctrine Of Quantum Meruit**

▮ Pena contends that regardless of the terms of the fee agreement or the requirements of the disclosure rule, he is entitled to payment under the doctrine of quantum meruit. The doctrine of quantum meruit permits a party to recover the reasonable value of services rendered or materials provided on the basis of an implied promise to pay. *Bakker v. Thunder Spring–Wareham, LLC*, 141 Idaho 185, 191, 108 P.3d 332, 338 (2005). Pena urges this Court to agree that his rate of compensation was reasonable, and that because Cheung expected to pay for his services he should not be denied his anticipated fee.

No evidence, however, was presented to the Industrial Commission in support of an amount that would be equitable, even if quantum meruit applied to this case. Therefore, recovery of fees pursuant to quantum meruit is denied.

**D. Attorney Fees**

**1. Attorney Fees Below**

▮ Cheung argues the Industrial Commission erred in failing to grant her attorney fees below. Cheung cites I.C. § 72–804, which permits the Commission to grant attorney fees to a worker's compensation claimant where an employer has contested a claim "without reasonable ground," and urges this Court to extend the principle to the present circumstances. In this case, however, the Industrial Commission noted

that the application of the disclosure rule of IDAPA 17.02.08.033.04 was a case of first impression. Under the circumstances, the Commission's decision not to grant attorney fees was not an abuse of its discretion.

### 2. Attorney Fees On Appeal

█ Cheung also requests attorney fees on appeal pursuant to I.C. § 12–121. Idaho Code § 12–121 permits an award of attorney fees in a civil action to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation. *Mutual of Enumclaw Ins. Co. v. Pedersen*, 133 Idaho 135, 139, 983 P.2d 208, 212 (1999). The statute in question does not, however, provide authority for an award of attorney fees on appeals from administrative agency rulings. *Northwest Pipeline Corp. v. State Dept. of Employment*, 129 Idaho 548, 550–51, 928 P.2d 898, 900–01 (1996). Cheung's request for attorney fees on appeal is therefore denied.

### IV. CONCLUSION

The Industrial Commission's order that Pena surrender his fees for representing Cheung in her worker's compensation action is affirmed. However, the Commission was without jurisdiction to order Pena to forfeit attorney fees earned from representation separate from the action before the Commission which included the attorney adjustment of $6665.47, the contingency payment from recovery from Cheung's automobile medical payment and $1,417.50 for the payment of Woolley's fee. This opinion does not address the legality of the fee arrangement or the amounts of those fees.

We therefore order Pena to remit to Cheung the sum of $155,641.26. Costs awarded to Cheung for the appeal.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES concur.

