IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 41013-2013

| | | |
|---|---|---|
| STEPHANIE M. REED, | ) | |
| | ) | Coeur d'Alene, September 2014 |
| Plaintiff-Respondent, | ) | Term |
| | ) | |
| v. | ) | 2014 Opinion No. 128 |
| | ) | |
| SCOTT AVERY REED, | ) | Filed: December 2, 2014 |
| | ) | |
| Defendant-Appellant. | ) | Stephen W. Kenyon, Clerk |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County.  Hon. Michael J. Griffin, District Judge; Hon. Scott L. Wayman, Magistrate Judge.

The judgment of the district court is <u>affirmed</u> <u>in</u> <u>part</u> and <u>vacated</u> <u>in</u> <u>part</u>.

Dan J. Rude, Coeur d'Alene, argued for appellant.[1]

Suzanna L. Graham, Suzanna L. Graham Attorney At Law PC, Coeur d'Alene and Mark Alan Ellingsen, Witherspoon Kelly, Coeur d'Alene, argued for respondent.

EISMANN, Justice.

This is an appeal out of Kootenai County from the decision of the district court upholding the judgment of the magistrate court in a divorce action.  We vacate four parts of the decision and remand for further proceedings.  We affirm the other challenged provisions of the decision.

## I.
## Factual Background.

Scott Avery Reed (Father) and Stephanie M. Reed (Mother) were married in 1993, and during their marriage they had three children who were born between 1996 and 2004.  On

---

[1] Michael G. Palmer, Coeur d'Alene, represented Father in this litigation until he withdrew on August 2, 2011.  Mr. Rude appeared as counsel for Father on August 19, 2011.

December 22, 2009, Mother filed for divorce. They agreed that there were irreconcilable differences between them that justified terminating their marriage. The remaining issues were tried in the magistrate court on January 13 and 14, 2011.

On February 24, 2011, the magistrate court entered a document titled "Judgment for Attorney's Fees," which stated that it granted Mother a judgment against Father in the sum of $10,000 for attorney fees. On the same date, it also entered a document titled "Judgment for Equalization of Property Settlement," which stated that it granted Mother a judgment against Father in the sum of $198,642.00 to equalize the division of community property.[2]

On January 28, 2011, the court orally announced its findings of fact and conclusions of law on the record. On April 7, 2011, the court filed a document titled "Findings of Fact, Conclusions of Law and Final Decree of Divorce," which stated that "[t]he attached Oral Pronouncement transcribed shall constitute the Findings of Fact, Conclusions of Law and Final Decree of Divorce." Attached to the document was a transcript of the proceedings on January 28, 2011, during which the court orally announced its decision.[3]

Father filed motions asking the court to reconsider its findings and conclusions and to make additional findings. They were heard on April 22, 2011, and on May 11, 2011, the court entered its order modifying the custody schedule for spring break; refusing to modify the Father's obligation to pay for health insurance on the children; specifying when Father's child support obligation would commence; ordering the parties to sign all documents necessary to execute the property division and to sign quitclaim deeds to effectuate transfers of community property; and awarding Mother the current balances in specified accounts.

---

[2] Neither document constituted a judgment because they did not comply with Rule 54(a) of the Idaho Rules of Civil Procedure. That rule provides that a "judgment shall not contain . . . the record of prior proceedings." I.R.C.P. 54(a) (2010). Both documents included the following recitation of prior proceedings:

> This cause came on regularly for Trial before the undersigned District Judge, of the above-entitled Court on the 13th day of January, 2011, Decision hearing being held on the 28th day of January, 2011. Present was the Plaintiff, STEPHANIE M. REED, by and through her Attorney of Record, SUZANNA L. GRAHAM, and the Defendant, SCOTT AVERY REED, by and through his Attorney of Record, MICHAEL G. PALMER.

[3] The document did not constitute a judgment because it did not comply with Rule 54(a) of the Idaho Rules of Civil Procedure. That rule provides that a "judgment shall not contain . . . the court's legal reasoning, findings of fact, or conclusions of law." I.R.C.P. 54(a)(2010). The attached transcript included not only a recitation of prior proceedings, the magistrate court's legal reasoning on various issues, and its findings of fact and conclusions of law, but it also included the court's dialogue with counsel and its comments to the parties.

On June 20, 2011, the magistrate court entered a document titled "Amended Final Decree of Divorce." It incorporated by reference the court's oral pronouncements on January 28, 2011, and the "Findings of Fact, Conclusions of Law and Final Decree of Divorce" entered on April 7, 2011. It then set forth that the parties were granted a divorce, the provisions for child support and custody, the real and personal property awarded to each party, the payment to be made by Father to equalize the division of the community property, and the award to Mother of attorney fees in the sum of $10,000.[4] On July 25, 2011, Father filed a notice of appeal from this purported judgment.

Mother obtained a writ of execution to enforce the purported judgment entered on February 24, 2011, in the sum of $198,642.00, plus interest, and the purported judgment entered on the same date for $10,000 in attorney fees, plus interest. She sought to execute upon the community property stock awarded to Father from the two corporations, but the writ was returned unsatisfied because the corporations had not issued any stock. The two corporations were Mountain Health Care, Inc., which owned the building in which Father practiced medicine, and Mountain Health Services, P.C., which was the medical practice for which Father worked. Mother sought an order requiring the corporations to issue stock to Father and to deliver the stock to the sheriff. After the matter was argued, the magistrate entered an order on September 9, 2011, granting the motion. On October 25, 2011, Father filed an amended notice of appeal adding the order as a matter he was appealing. He later filed three more amended notices of appeal, the last being on April 20, 2013.

The appeal was heard by the district court, and on April 5, 2013, it entered its decision on appeal. It affirmed all aspects of the magistrate court's purported judgment except the dates of the qualified domestic relations orders. The district court held that the orders incorrectly listed the date of the parties' divorce as June 20, 2011 (the date of the document titled "Amended Final Decree of Divorce") and that the correct date was January 14, 2011 (the date the magistrate

---

[4] The document did not constitute a judgment because it did not comply with Rule 54(a) of the Idaho Rules of Civil Procedure. It included a recitation of prior proceedings, and the magistrate court's findings of fact and conclusions of law that were orally announced on January 28, 2011, were incorporated by reference. It also incorporated an attached schedule of property that included the parties' contentions as to dates of acquisition and values of various items of property and the party to whom they wanted the property awarded.

orally stated that the parties would be deemed divorced based upon their stipulation at the close of the trial that they wanted to be divorced).[5] Father then timely appealed to this Court.

## II.
## Standard of Review.

In an appeal from a district court's determination of a case appealed to it from the magistrate court, we review the decision of the district court to determine whether it correctly applied the applicable standard of appellate review. *Peterson v. Peterson*, 156 Idaho 85, 88, 320 P.3d 1244, 1247 (2014).

## III.
## Did the District Court Err in Affirming the Magistrate Court's Valuation and Award of the Shares of Stock in Mountain Health Care, Inc.?

a.    **Valuation of Mountain Health Care, Inc.**    Father had interests in two corporations—the professional corporation named Mountain Health Services, P.C., for which he practiced medicine and the corporation named Mountain Health Care, Inc., which owned the land, building, and some equipment leased to the professional corporation. Neither corporation had issued stock at the time of trial, but Father was entitled to 22.97% of the shares of stock in Mountain Health Care, Inc. His interest in both corporations was community property.

The market value of Mountain Health Care, Inc., was determined by deducting its liabilities from the market value of its assets. Father called an expert who testified as to the market value of the corporation and Father's interest in it. The expert prepared an exhibit listing the values of categories of assets, the amounts of categories of liabilities, and the net asset value. The magistrate court found this expert very credible. With respect to the value of the corporation's real property, the expert stated that he was not qualified to perform real estate appraisals, so he used the market value determined by the real estate appraiser called by Father, which was $2,500,000. The real estate appraiser called by Mother testified that the value of the real property was $4,850,000, which testimony the court found more credible. The expert called

---

[5] An oral statement by the court or even a stipulation by the parties does not constitute the termination of the marriage. A marriage continues until the entry of a final judgment terminating it. *Suter v. Suter*, 97 Idaho 461, 466, 546 P.2d 1169, 1174 (1976); I.C. §§ 32-601, 32-602.

by Father testified on cross-examination that if the value of the real property was $4,850,000, the value of the corporation would be $2,795,147 and the value of Father's 22.97% interest would be $642,045. The court found that the market value of Father's interest in the corporation was $642,045.

On appeal to the district court, Father challenged the valuation of his interest in Mountain Health Care, Inc., and he makes several of the same challenges on this appeal. "A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 856, 55 P.3d 304, 310 (2002). In applying that principle, the appellate court cannot reweigh the evidence, judge the credibility of the witnesses, or substitute its view of the facts for that of the trial court. *Argosy Trust ex rel. Andrews v. Wininger*, 141 Idaho 570, 572, 114 P.3d 128, 130 (2005). It is the responsibility of the trial court to judge the credibility of witnesses and weigh conflicting evidence. *Bream v. Benscoter*, 139 Idaho 364, 367, 79 P.3d 723, 726 (2003). The appellate court's role is simply to determine whether there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding that is challenged on appeal. *Miller v. Callear*, 140 Idaho 213, 216, 91 P.3d 1117, 1120 (2004). The district court on appeal reviewed the record and concluded that the magistrate court's valuation of the corporation was supported by substantial and competent evidence. Father contends that the district court erred in its analysis.

**1. Valuation of real property.** The primary asset of the corporation was the real property that it owned. Mother called a real estate appraiser to testify as to its market value. He had appraised the property in February 2009 on behalf of a bank, and he testified that as of February 2009, the market value of the real property was $4,816,000. Mother also questioned him about the report prepared by the appraiser that Father intended to call as a witness, and he pointed out various criticisms as to that appraiser's analysis. On cross-examination, the appraiser called by Mother testified that the best way to obtain an opinion as to the current market value would be to do a new appraisal; that he was not retained to do a new appraisal; and that he could not say that the market value of the property at the time of trial was $4.8 million. On redirect, he testified that in preparation for testifying he had pulled the data sheets used for appraisals done on other medical buildings sold during the period from October 2009 through December 2010 and that the value per square foot of those buildings was higher than the value per square foot of the corporation based upon his February 2009 appraisal. The real estate

5

appraiser called by Father testified that the market value of the corporation's real property was $2,500,000. The appraisal report stated that the effective date of that appraisal was July 28, 2010.

The magistrate court held that the real estate appraiser called by Mother was more credible than the appraiser called by Father, primarily because of his demeanor during cross-examination and his use of only distressed sales in Shoshone county as comparable sales rather than considering sales between willing sellers and buyers in and around the region. The court found that the value of Father's interest in the corporation was $642,045.

In a divorce action, the community property assets are to be valued as of the date of the divorce trial. *Suter*, 97 Idaho at 466, 546 P.2d at 1174.[6] The court recognized that neither appraiser offered an opinion as to the market value as of the date of the divorce trial, but it correctly stated that it had to decide the case based upon the evidence it had.

Father argues that when the appraiser called by Mother performed his appraisal, there was a planned addition to the building and he based his appraisal on the addition being completed according to its plans. The proposed, two-story addition would add 7,595 square feet to the building, with 2,875 of the square feet being unfinished and used for records storage. However, the addition actually built contained 382 fewer square feet. Father argues that if the value per square foot of the proposed addition was calculated based upon the value of the proposed addition as determined by Mother's appraiser in 2009 and that value per square foot was multiplied by the reduced square footage, the value of the building should be reduced by $70,505.70. No expert so testified, nor did any expert testify that every square foot of the addition had the same value.

Father next argues that the magistrate court erred in considering that the corporation had insured the building for $3,750,000 after Father had received the appraisal report from his appraiser that the market value of the real property was $2.5 million. The court found that the appraiser's opinion held little weight in light of the opinion of Mother's appraiser, whom the court found to be a very credible witness, and the amount of insurance purchased by the

[6] There are exceptions to this rule. The parties may stipulate to an earlier valuation date, *Sword v. Sweet*, 140 Idaho 242, 253, 92 P.3d 492, 503 (2004); the valuation date will be before the trial if the trial court enters a partial final judgment terminating the marriage in order to expedite the later resolution of the property distribution issues, *Brinkmeyer v. Brinkmeyer*, 135 Idaho 596, 599-600, 21 P.3d 918, 921-22 (2001); and the trial court may retain jurisdiction to value retirement benefits after the actual date of divorce, *Hunt v. Hunt*, 137 Idaho 18, 21, 43 P.3d 777, 780 (2002).

6

corporation on the building. Father argues that the insurance policy shows that it was replacement cost insurance, which is not the measure of market value.

Although the magistrate court considered the amount of the insurance purchased on the building, it stated, "I find, based on the testimony here, that [Mother's appraiser's] appraised value is the most credible evidence that I have." After discussing that appraiser's testimony regarding reviewing the per-square-foot value of other medical buildings that had been sold in recent years, the court again stated, "based on the totality of the evidence," that the opinion of Mother's appraiser "regarding the value is still the most credible evidence that I have concerning the present fair market value, as of the date of the divorce, of the building." The court concluded that it did not have information regarding how the corporation arrived at the amount of insurance to purchase, but it did have evidence as to how Mother's appraiser arrived at his opinion as to value. The court then stated that "I still find that [Mother's appraiser's] valuation is the correct one and the most accurate one as of the date of divorce."

The magistrate court based its valuation of the real property upon the testimony of the appraiser called by Mother. The court found that the opinion of Father's appraiser was not credible and that the opinion of Mother's appraiser was the most credible evidence it had. The court also noted that it had to decide the case based upon the evidence it had.

**2. Valuation of equipment.** Father called the clinic manager to testify regarding various issues unrelated to the value of the Mountain Health Care, Inc.'s equipment. During her testimony she stated that she was the records custodian for both that corporation and the professional corporation. Father told her there had been testimony about some equipment leases and that there had been an issue about some unidentified lease. She was then asked whether she knew what Father was talking about, and she answered, "No." She then added that the corporation owns the x-ray equipment and leases it to the professional corporation. Father asked whether that lease had ever been challenged by a lender or other financier, and she replied that to her knowledge it had not.

On cross-examination, Mother asked, "Do you have any idea what the fair market value of the x-ray machine is?" to which the manager replied: "I'm gonna say probably they—I'm gonna say around 50,000 maybe. I don't know for sure." Mother then asked, "The only assets held by [Mountain Health Care,] Inc. [are] basically the building, the land and the x-ray machine?" to which the clinic manager answered, "Right."

7

After the clinic manager testified, Father called the expert who would testify about the value of the corporation. As stated above, that expert had prepared an exhibit listing the values of categories of the corporation's assets and the amounts of its liabilities, and that exhibit was admitted into evidence. The categories of assets listed on that exhibit included "Office Equipment," "Medical Equipment," and "Total Equipment." The expert determined the corporation's assets and liabilities as reported in its financial statements dated December 31, 2009, and then in his November 11, 2010, report he estimated the values of those assets as being 70% of their book value. The book value of the office equipment was $112,691, the book value of the medical equipment was $235,393, and the estimated total value of both categories of equipment was $243,659. The magistrate court found the expert's testimony to be credible and found that the market value of the corporation was as he testified based upon the exhibit, but with the market value of the real property being as testified by Mother's appraiser. Therefore, the court found that the corporation had office and medical equipment with a combined market value of $243,659.

Father contends that the district court erred in finding that this value was supported by substantial and competent evidence. We disagree. Father called the expert to testify as to the market value of the corporation, based upon the values of the corporation's assets and the amounts of its liabilities. The clinic manager testified that the corporation currently insured the contents of the building for $387,400, which she understood to be the value of the contents of the building. The various items that comprised the office equipment and medical equipment were not identified. Father did not offer any evidence that the corporation had disposed of its office equipment or any of its medical equipment since 2009, nor was there any evidence of a change in its business that would indicate that it had disposed of any equipment. The clinic manager's answer to Mother's question that the corporation's only assets were "basically" the land, the building, and the x-ray machine could have been construed to mean that they were the most valuable or significant individual assets. With respect to the value of the x-ray machine, the clinic manager stated that it was "around 50,000 maybe. I don't know for sure." There was conflicting evidence on this issue, and the magistrate court could weigh the evidence and consider reasonable inferences to conclude that the corporation had equipment with a market value of $243,659.

**3. Cash on hand and accounts receivables.** The exhibit prepared by Father's expert listed the assets of the corporation as including "Cash & Cash Equivalents" with a value of $125,590 and "Uncollected Accounts Receivable" with a value of $5,637. Father argues that the evidence did not establish those values as of January 13 and 14, 2011. These values were in the expert's exhibit, which was admitted into evidence by stipulation of the parties. Although the values in the exhibit were determined as of December 31, 2009, Father did not offer any evidence showing that the values had decreased by the time of the trial. The magistrate court was entitled to make its decision on the evidence admitted during the trial, and it could reasonably infer that Father would have offered evidence of any material change in those values between December 31, 2009, and the trial.

**4. Long-term debt.** The exhibit prepared by the expert Father called to testify about the value of the corporation included a liability list titled "Long Term Debt," and it stated that such debt was $2,383,252, based upon the corporation's financial statements dated December 31, 2009. In cross-examining the clinic manager, Mother raised the issue of the corporation's current long-term debt and asked: "How much is the current loan amount on the building? I hate to just throw that at you. I know there's an exhibit somewhere, but I know you can probably just tell us." The clinic manager answered, "It's about—it's 2.8 million." Mother then stated: "And that—you sent me [a] statement, I think, a month ago. So, that would be the most current; is that correct?" and the clinic manager answered: "Right. Yes." The magistrate court found that the long-term debt of the corporation was $2,383,252.

In his motion for reconsideration, Father pointed out that the financial statements showed "the long term debt amount of $2,383,282.00 was what was owed as of the end of 2009 and not as of the date of the trial" and that the clinic manager "testified that the current loan against the building was in the amount of $2,800,000.00," which would reduce the market value of the real property. In denying the motion, the magistrate court simply stated that it "valued these assets based on the evidence that had been presented at trial by both sides" and that it found, "after reviewing the transcript and the record, that those values were supported by substantial evidence in the record." The magistrate court did not mention the testimony of the clinic manager or the fact that the long-term debt figure relied upon by the court was the amount owing about one year prior to trial.

9

On appeal to the district court, Father argued that the magistrate court erred in failing to value the property as of the date of the trial because it failed to take into account the uncontradicted evidence of the clinic manager. Father wrote in his brief:

> The uncontradicted evidence introduced at trial established that Mountain Health Care, Inc., owed at least $400,000.00 more as of the date of trial than the amount Judge Wayman found it owed. . . . The uncontradicted evidence at trial from Ms. Olson was that the only asset that Mountain Health Care, Inc., had other than the building and land was an x-ray machine worth $50,000.00.

Although the district court did not expressly address this argument based upon the clinic manager's testimony, it upheld the magistrate court's valuation, stating, "The exact value of most of the parties' assets and debts as of the date of trial is impossible to establish with mathematical precision."

In determining the value of the corporation, the magistrate court relied upon testimony regarding the balance of the corporate debt owing on the real property as of December 31, 2009, which was over one year prior to the trial, even though there was testimony from the clinic manager, elicited by Mother, that the balance owing on the debt as of the date of trial was significantly greater. "This Court has held that the trial court must accept as true the positive, uncontradicted testimony of a credible witness, unless his testimony is inherently improbable or impeached." *Russ v. Brown*, 96 Idaho 369, 373, 529 P.2d 765, 769 (1974). The magistrate court made no findings regarding the credibility of the clinic manager. Therefore, the district court erred in affirming the magistrate court's findings as to the value of the corporation.

The case must be remanded to the magistrate to make a finding as to whether or not the clinic manager's testimony was credible. If so, then the court must adjust accordingly the value of the corporation and the debt owing by Father to equalize the division of community property and debts. The court may base its additional findings upon the evidence presented during the trial or, in its discretion, it may take such additional evidence as it deems necessary.

**5. Discount of stock value the lack of a readily defined market and minority interest.** Father contends that the magistrate court erred in failing to discount the value of Father's interest in the corporation to take into account the lack of marketability of the stock and his minority interest in the corporation. On appeal to the district court, Father argued that the magistrate court erred in failing to "discount the shares either because of the lack of a readily defined market for the shares nor [sic] because the shares represented a minority interest in the

10

corporation." He admitted that "[n]o expert was called concerning the amount of the discount which should be applied to Mountain Health Care, Inc., stock," but he argued that the court should have applied a discount that was consistent with the testimony of one of Father's experts regarding the discount that should be applied to the value of the professional corporation's stock. There was no evidence that the expert's opinion as to the discounts in the value of the stock in the professional corporation should apply to both corporations. The district court did not err in failing to reverse the magistrate for failing to rule in Father's favor regarding an issue on which no evidence was presented at the trial.

**b. Award of the stock in Mountain Health Care, Inc., to Father.** The magistrate court awarded the stock in Mountain Health Care, Inc., to Father and granted Mother a monetary judgment to equalize the division of the community property. The court found that the net value of the community estate was $1,256,211, and it awarded the community interest in both corporations to Father as he was the party who would have the continued interest in the medical practice and building. The court found that "it would be incredibly wasteful to try and force a physician of his experience to try and sell that interest in a medical practice." As a result of awarding Father those assets, it was necessary to grant Mother a monetary judgment against him in order to make the division of community property and debts substantially equal.

Father listed as an issue on appeal to the district court that the magistrate court erred in its "valuation and award" of the shares of stock in Mountain Health Care, Inc. In his brief, Father did not include any argument that the magistrate court abused its discretion in awarding him the stock in the corporation rather than ordering the stock sold and dividing the proceeds. He argued that the court's valuation of the stock should be set aside because it was not accurate; that the substantial value of the shares also requires setting aside the monetary judgment; and that if on remand the magistrate court decides to award the stock to Father it should have a further evidentiary hearing to receive additional evidence as to the assets and debts of the corporation and the minority shareholder and lack of marketability discounts. He concluded by stating, "The holding in *Simplot* [*v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974)] would also not prohibit [the magistrate court] from ordering that the shares of stock be sold instead of holding a further hearing on the share value and this option should be left open for [the court]."

On appeal, the district court affirmed the award of the stock to Father with a monetary judgment to Mother, correctly stating, "Because of the nature of the parties' community assets

11

and debts the court decided that it was not possible to divide the property without an equalization payment."

On appeal to this Court, Father lists as an issue on appeal that the district court erred in affirming the magistrate court's "valuation and award" of the stock. However, Father again does not make any argument that the magistrate court abused its discretion in awarding the stock to him. He again simply states that if the matter is remanded to the magistrate court to take further evidence as to the value of the corporation, the *Simplot* opinion would not prohibit the court from ordering the stock sold.

To the extent that Father contends that the magistrate court abused its discretion in awarding him the stock and granting Mother a monetary judgment to make the community property division substantially equal, he has waived that issue because he did not support it with argument and authority. *Bolognese v. Forte*, 153 Idaho 857, 866, 292 P.3d 248, 257 (2012).

## IV.
### Did the District Court Err in Affirming the Magistrate Court's Valuation of the Commercial Lot in Pinehurst?

The parties owned a commercial lot in Pinehurst which the magistrate court valued at $15,200 and awarded to Father. On appeal to the district court, Father contended that the value was not supported by any testimony and that Mother's counsel admitted in open court that the value of the lot was $10,000. The district court did not expressly address the issue on appeal, but it concluded that "[t]here was substantial competent evidence to support the trial court's valuation of the parties' real properties."

On appeal to this Court, Father contends that Mother did not express an opinion as to the market value of this real property. His contention is incorrect.

At the beginning of the trial, Mother's attorney provided the magistrate court with Court's Exhibit 1, which was a Joint Inventory of Property, listing each party's contention as to value of most of the items of property and to whom each item should be awarded. Before calling Mother to testify, her counsel stated: "And, Judge, we have agreed that she's gonna go through the property list, and then Dr. Reed's gonna go through the property list, and give their values and what they want the award to be." Mother began testifying about her opinion of the values of the various items listed. Item No. 13 on the Joint Inventory of Property is the Pinehurst

12

commercial lot with a value listed by Mother as $15,200.00. With respect to that property, Mother testified as follows:

> MISS GRAHAM: Q. And item No. 13, what's that item?
> MOTHER: A. That is a commercial lot right in the—at the one stop sign in Pinehurst um, that we bought with my mother-in-law and another couple. Um, so we're one—we are one-third owners of it. Um, we paid cash for it. It has since gone down significantly in value. And that number, I believe, we came up with just based on the tax assessments. There wasn't anything for our appraiser to uh, relate it to, compare it to.
> MISS GRAHAM: Q. So, we just did the tax assessment notice and divided by three? So, that's just—
> MOTHER: A. Yes.
> MISS GRAHAM: Q. —the tax—
> MOTHER: A. Yes.
> MISS GRAHAM: Q. —assessed value—
> MOTHER: A. Yes.
> MISS GRAHAM: Q. —divided by three?
> MOTHER: A. I believe so.
> MISS GRAHAM: Q. Okay. And nothing's owed on that property?
> MOTHER: A. No.

Mother's reference to "that number" was obviously the value listed on the Joint Inventory of Property for the Pinehurst property. In context, the magistrate court could reasonably interpret her testimony as stating that her opinion as to the market value of the property was the value listed on the Joint Inventory of Property.

Both Father and his attorney discussed Mother's testimony to the amount of $15,200.00. During his direct examination, Father's attorney asked him, "She's valued [the Pinehurst Property] at 15,200. Do you disagree with that?" Father responded, "Um, I—to me it is not worth 15,200." This exchange supports the fact that the tax value of the property to which Mother testified was $15,200.00.

"This Court has followed the rule that the owner of property is qualified to testify to its value." *Empire Lumber Co. v. Thermal-Dynamic Towers, Inc*., 132 Idaho 295, 306, 971 P.2d 1119, 1130 (1998). Mother was an owner of the property. The magistrate court's factual finding as to the value of the property was based on substantial and competent evidence, and the district court did not err in affirming it.

Father also argues on appeal: "Ms. Reed, through Ms. Graham, admitted that the lot was worth $10,000.00 and should be awarded to Dr. Reed at that value. This admission was accepted

13

by Dr. Reed. An admission made by an attorney at trial is binding on his or her client as a solemn admission." This assertion by Father is factually incorrect, and Father does not include the entire verbal exchange in his brief on appeal.

The parties owned a one-third interest in the Pinehurst commercial property, and Father's mother owned a one-third interest, as did another couple. During his direct examination, Father testified that he wanted the property awarded to Mother. As Father's counsel continued to question him about the property, the following exchange occurred:

> FATHER: A. And if I had to put a value on it, I would accept that piece of property at 10,000. I—if the Court were to say, well, the value's $10,000 and we can award it to Reed, I would be pleased with that. To me that's what it's worth.
> MR. PALMER: Q. Okay.
> MISS GRAHAM: We'll stipulate to that, Judge.
> THE COURT: Stipulate to what?
> MISS GRAHAM: $10,000 to Dr. Reed. We didn't know what the value was.
> FATHER: A. I did not—if I can state—make a statement that the Court was awarding that to me uh, we could—stipulate, I don't mind stipulating the value at $10,000. I hope we're not stipulating that I desire that piece of property.
> MISS GRAHAM: Oh, okay. Sounded like that, but I guess not.

In his brief on appeal, Father omitted Father's and Miss Graham's last statements quoted above. The stipulation was that the lot would be valued at $10,000 if it was awarded to Father. He refused to accept the stipulation because he did not want the lot to be awarded to him. As the magistrate court noted during the hearing on the parties' motions for reconsideration, "there was an offer through Miss Graham to stipulate that, that value be $10,000. But it was never accepted by Dr. Reed or his attorney." The district court did not err in affirming the magistrate court's valuation of this property.

## V.
### Did the District Court Err in Affirming the Magistrate Court's Determination of Mother's Annual Income for Calculating Child Support?

At the time of trial, the parties had three minor children. The magistrate court awarded primary physical custody of the children to Mother and ordered Father to pay child support. Father challenges on appeal the district court's affirmance of the magistrate court's calculation of Mother's annual income for calculating child support. Idaho has adopted Idaho Child Support

Guidelines. I.R.C.P. 6(c)(6). They "apply to determinations of child support obligations between parents in all judicial proceedings that address the issue of child support for children under the age of eighteen years or children pursuing high school education up to the age of nineteen years." I.R.C.P. 6(c)(6) § 2. They provide that "[t]he basic child support obligation shall be based upon the Guideline Income of both parents, according to the rates set out in the schedules [set forth in the guidelines]." I.R.C.P. 6(c)(6) § 10(a).

After the parties separated, Mother went to work full time (three 12-hour shifts) as a labor and delivery nurse. She later voluntarily reduced her work hours to 24 hours per week because the hospital had changed the schedules for full-time labor and delivery nurses so that their shifts would not be consecutive and would rotate pursuant to a two-week schedule. She thought a more regular schedule would be better for the children.

The guidelines state, "If a parent is voluntarily unemployed or underemployed, child support shall be based on gross potential income . . . ." I.R.C.P. 6(c)(6) § 6(c)(1). As applicable to this case, "Determination of potential income shall be made according to any or all of the following methods, as appropriate: (A) Determine employment potential and probable earnings level based on the parent's work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community." *Id*. When a parent is voluntarily underemployed, the Guidelines do not give the trial court discretion not to impute potential income.[7]

The magistrate court found that Mother was voluntarily underemployed, so it was required to impute income to her. The parties had stipulated to the admission of an exhibit that showed that Mother's annual income was $41,042.56 when she worked 24 hours per week. However, the court misunderstood the testimony and thought that mother was only working 24 hours every two weeks. It stated: "For purposes of computing child support, I'm going to use the figure set forth on [the exhibit] and impute an additional $20,514 of income for her for purposes of computing child support. So, her gross income for computing child support will [be] $41,028." Thus, after imputing $20,514 of annual income to Mother, the court arrived at a figure that was less than her actual annual income.

---

[7] The Guidelines do provide, "Ordinarily, a parent shall not be deemed underemployed if the parent is caring for a child not more than 6 months of age." I.R.C.P. 6(c)(6), § (c)(1). None of the children in this case were under six months of age at the time of the trial.

On October 21, 2011, Father filed a motion for reconsideration raising various issues, including explaining how the magistrate court had miscalculated Mother's actual income. He argued that using the correct figures, Mother's annual income would be $68,396.96 per year if she was working full time. The magistrate court denied the motion for reconsideration regarding child support.

On appeal to the district court, Father raised the issue and explained the error in the magistrate court's calculations. In her answering brief, Mother admitted that the testimony showed she was working 24 hours per week, that the magistrate court imputed income to her of $20,514.00, and it then imputed this into her income for a total income of $41,028.00." The district court did not specifically address the issue raised by Father. It merely stated: "In determining an appropriate amount of child support the trial court imputed income to both parties."[8] The district court concluded, "There was substantial competent evidence to support the court's findings as to the amount of child support."

Because the magistrate court's valuation of Mother's guidelines income was incorrect, the district court erred in affirming it. This case will have to be remanded for recalculation of child support.

## VI.
### Did the District Court Err in Affirming the Magistrate Court's Award of Attorney Fees and Court Costs to Mother?

After orally stating its findings of fact and conclusions of law on the record, the magistrate court stated that it was going to make a partial award of attorney fees to Mother in the sum of $10,000. It based its decision on Idaho Code section 32-704(3), which reads:

> The court may from time to time after considering the financial resources of both parties and the factors set forth in section 32-705, Idaho Code, order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this act and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

---

[8] The magistrate court also imputed income to Father, finding that he had voluntarily reduced his hours worked.

I.C. § 32-704(3). On February 24, 2011, the court entered a document purporting to be a judgment against Father for that amount.

On April 22, 2011, Father filed a motion for reconsideration asking that the magistrate court reconsider, among other things, the "Judgment for Attorney's Fees." After a hearing on the motion, the magistrate court entered an order on November 15, 2011, setting aside the prior purported judgments for attorney fees. The order added that Mother could pursue her claim for attorney fees by filing an appropriate memorandum of costs and fees within fourteen days of November 7, 2011.

On November 21, 2011, Mother submitted a "Memorandum of Costs and Fees," requesting $15,718.00 in attorney fees. Father filed an objection, and after the matter was argued the magistrate court entered a judgment on June 8, 2012, which awarded Mother attorney fees in the sum of $10,000 and stated that it superseded and replaced any prior award of attorney fees by the court. On appeal to the district court, Father argued that the magistrate court erred in making the award because: (a) Mother failed to file a memorandum of costs within fourteen days after entry of the "Amended Final Decree of Divorce" filed on June 20, 2011; (b) the only attorney fee statute mentioned in Mother's memorandum of costs was Idaho Code section 12-120(3), which is inapplicable; (c) the facts did not justify the award; (d) the magistrate court abused its discretion because it mistakenly believed that Mother's annual income was only about $20,000; and (e) Mother had the ability to pay her own attorney fees.

The district court affirmed the award, ruling that the magistrate court did not abuse its discretion in making the award, it was supported by substantial and competent evidence, the memorandum of costs was filed within the time frame stated by the district court, it was not necessary for Mother to be a prevailing party, and the statute was designed to insure that both parties in a divorce action had a fair opportunity to present their cases to the court. On appeal to this Court, Father repeats the arguments made to the district court.

**a. Failure to timely file a memorandum of costs.** The magistrate court ruled that if Mother desired to renew her request for an award of attorney fees, she had to file a memorandum of costs within fourteen days of November 7, 2011, and she did so on November 21, 2011. Father contends that the filing of the memorandum of costs was untimely under Rule 54(d)(5) of the Idaho Rules of Civil Procedure, which provides that a memorandum of costs "may not be filed later than fourteen (14) days after entry of judgment." He states that "[t]he last judgment

17

(and the only final judgment from Dr. Reed's perspective) which was filed in the case was the Amended Decree of Divorce which was entered on June 20, 2011." Father's argument fails for two reasons. First, the document did not constitute a judgment.[9] Second, Rule 54(d)(5) does not apply to the award of attorney fees under Idaho Code section 32-704. Rule 54(d) applies to the awarding of costs and attorney fees to the prevailing party or parties in a civil action. I.R.C.P. 54(d)(1), 54(e)(1). To be awarded attorney fees under section 32-704, a party need not be a prevailing party.

The statute allows a court to make an award of reasonable attorney fees "from time to time after considering the financial resources of both parties and the factors set forth in section 32-705, Idaho Code." Before making an award, the court may certainly require the party's attorney to submit a document providing a basis for estimating the attorney fees that will be incurred or substantiating the attorney fees that have been incurred, depending upon when the award is to be made. However, a memorandum of costs is not a requirement for making an award of attorney fees under the statute.

**b. Mother's failure to cite Idaho Code section 32-704 in her memorandum of costs.** In Mother's memorandum of costs, her counsel stated that she had reviewed the entries set forth in an attached exhibit and that "to the best of my knowledge and belief the descriptions of the work performed and the fees attributed to the work performed are correct and in compliance with Idaho Code Section 12-120(3) and I.R.C.P. 54." Citing *KEB Enterprises, L.P. v. Smedley*, 140 Idaho 746, 754, 101 P.3d 690, 698 (2004), and *Bingham v. Montane Res. Assocs.*, 133 Idaho 420, 424, 987 P.2d 1035, 1039 (1999), Father argues the magistrate erred in awarding the attorney fees where Mother failed to cite section 32-704 in her memorandum of costs. *KEB Enterprises* relies upon *Bingham*, which relies upon *Curr v. Curr*, 124 Idaho 686, 864 P.2d 132 (1993). In *Curr* we stated: "Idaho Appellate Rule 35(a)(5) requires a statement of the basis for the claim for attorney fees on appeal to be included in the claimant's brief. This is necessary in order to allow the responding party a due process opportunity to challenge such claims." *Id.* at 694, 864 P.2d at 140.

Here, considering the history of the attorney fee awards, there is no contention that Father was unaware that the magistrate court would be awarding the fees under Idaho Code section 32-

---

[9] *See supra* n. 4.

704 or that Mother filed the memorandum of costs to obtain an award under that statute. In his objection to the requested award, Father wrote: "Primarily, the Defendant has objected to an award of attorney fees and costs because the evidence at trial did not establish a basis for the award under this section when considering the factors set forth in I.C.32-705. The same objection is again made as to the basis for the award." The magistrate did not err in awarding the fees merely because Mother cited the wrong statute in her memorandum of costs.

**c. The facts do not support the award.** Father argues that the magistrate court erred because "I.C.32-705(1)(b) requires the Court to consider whether or not the person seeking an award of attorney fees is unable to support himself or herself through employment." This argument is incorrect.

Idaho Code section 32-704 makes two references to Idaho Code section 32-705.[10] The first subsection of section 32-704 provides that a court in a divorce proceeding may order one spouse to pay temporary maintenance to the other "upon showing made in conformity with section 32-705." I.C. § 32-704(1). The third subsection provides that a court in a divorce proceeding may order one party to pay reasonable attorney fees to the other, or to the other's attorney, "after considering the financial resources of both parties and the factors set forth in section 32-705." I.C. § 32-704(3). To award temporary maintenance, there must be a "*showing* made *in conformity with* section 32-705," while an award of reasonable attorney fees may be made only after "*considering the factors* set forth in section 32-705." (Emphases added.) The difference in language is significant.

Section 32-705 contains two subsections. The first one states: "Where a divorce is decreed, the court may grant a maintenance order if it *finds* that the spouse seeking maintenance:

---

[10] The relevant portions of Idaho Code section 32-704 state:

> 1. While an action for divorce is pending, the court may, in its discretion, on the motion of either party and upon showing made in conformity with section 32-705 or section 32-706, Idaho Code, whichever be appropriate, order the payment of temporary maintenance of either spouse by the other or temporary support of a child of the marriage, in amounts and on terms just and proper under the circumstances.
> . . . .
> 3. The court may from time to time after considering the financial resources of both parties and the factors set forth in section 32-705, Idaho Code, order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this act and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

19

(a) Lacks sufficient property to provide for his or her reasonable needs; and (b) Is unable to support himself or herself through employment." I.C. § 32-705(1) (emphasis added). This subsection does not state factors to consider; it states mandatory factual findings for making the award. The award can be made only if the court "finds" those two factual circumstances exist. However, the second subsection of section 32-705 states that the order "shall be in such amounts and for such periods of time that the court deems just, *after considering all relevant factors which may include* [seven listed factors]." I.C. § 32-705(2) (emphasis added). This is the only reference to "factors" in section 32-705. The factors in the list are not factual circumstances that must be found to exist. They are factual circumstances that the court is to consider.

Thus, in *Jones v. Jones*, 117 Idaho 621, 790 P.2d 914, (1990), we held: "[T]he trial court need only consider the factors set forth in I. C. § 32–705 in considering whether to award costs and attorney's fees to a party in a divorce action. Idaho Code § 32–705(2) lists the 'relevant factors' in subsections (a) through (f)." *Id.* at 626, 790 P.2d at 919. Consistent with *Jones*, in *Pelayo v. Pelayo*, 154 Idaho 855, 303 P.3d 214 (2013), we upheld a spouse's award of attorney fees under section 32-704 even though there was no finding that she lacked sufficient property to provide for her reasonable needs and was unable to support herself through employment, which would have been required if section 32-705(1) was applicable. *Id.* at 865, 303 P.3d at 224. Likewise, in *McGriff v. McGriff*, 140 Idaho 642, 99 P.3d 111 (2004), we upheld an award of attorney fees based upon a disparity of income between the two parties. *Id.* at 653, 99 P.3d at 122.

**d. Abuse of discretion.** Finally, Father raises several issues which simply amount to questioning whether the magistrate court abused its discretion in awarding the fees. Idaho Code section 32-705(2) sets forth factors that the trial court must consider in determining whether to order one spouse to pay costs and attorney fees to the other in a divorce action. *Pelayo*, 154 Idaho at 864, 303 P.3d at 223. They are:

> (a) The financial resources of the spouse seeking maintenance, including the marital property apportioned to said spouse, and said spouse's ability to meet his or her needs independently;
> (b) The time necessary to acquire sufficient education and training to enable the spouse seeking maintenance to find employment;
> (c) The duration of the marriage;
> (d) The age and the physical and emotional condition of the spouse seeking maintenance;

20

(e) The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance;
(f) The tax consequences to each spouse;
(g) The fault of either party.

I.C. § 32-705(2).

These are factors that must be considered, but the weight to be given each of them is within the discretion of the trial court. Therefore, the decision to award attorney fees pursuant to Idaho Code section 32-704 is reviewed under an abuse of discretion standard. *Hoskinson v. Hoskinson*, 139 Idaho 448, 465, 80 P.3d 1049, 1066 (2003). To determine whether the trial court abused its discretion, this Court analyzes: "(1) whether the trial court correctly perceived the issue as discretionary; (2) whether the trial court acted within the boundaries of its discretion and consistent with the applicable legal standards; and (3) whether the trial court reached its determination through an exercise of reason." *Campbell v. Kildew*, 141 Idaho 640, 650, 115 P.3d 731, 741 (2005).

Father argues that Mother received a net award of $628,105.00 in property, which included the equalizing judgment; that it is not apparent from the record that the magistrate court considered the amount of the child support award; that Mother was able to make payments to her attorney and to pay $10,000 to a consultant; and that the magistrate court was mistaken as to Mother's annual income. None of these arguments show an abuse of discretion except the magistrate's error regarding Mother's annual income.

One of the significant factors relied upon by the magistrate court in deciding to award attorney fees to Mother was the disparity between the parties' incomes. The court stated:

> Here, looking at these factors I've got Mrs. Reed who's a nurse, but she's only working part-time, even though it was full-time. Her actual income is about $20,000 per year. And she was basically a full-time stay-at-home mom for about 13 years prior to going back to work.
> Dr. Reed is a physician working full-time. Has the capability of earning of [sic] $164,000 a year. And there's the—he's got an interest in the medical practice corporation and the medical building corporation that may generate additional income.

In exercising its discretion, the court must have an accurate understanding of the factors it deems to be material. The court incorrectly believed that Mother had an annual income of about $20,000 per year, when in reality her annual income was slightly over $40,000 per year. We are

not holding that the difference in income should produce a different result. We would uphold the magistrate court's discretion to make the attorney fee award even if it had accurately understood the amount of Mother's income. However, it was apparent that the disparity in income was a significant factor in the court's decision to make the award. The court stated that "the net effect of this circumstance if I—would be to require Mrs. Reed to take part of her community property here and force liquidation of that in order to pay attorney fees, when I have this giant disparity of income between the two parties." It then concluded, "And so, I think it is appropriate, given all of the factors here, given that it was an 18 year marriage, given that the increased income that Dr. Reed has, that he be required to pay a portion of the litigation costs incurred by Mrs. Reed in this case." Although it is unlikely that the court would have declined to award attorney fees under section 32-704 had it understood that Mother's actual income was over $40,000 per year, that decision is within the discretion of the magistrate court. We cannot exercise that discretion for it.

Therefore, we must hold that the district court erred in failing to find that the magistrate court did not abuse its discretion in making the award of attorney fees because it was based upon a misunderstanding of the facts upon which it relied. The award of attorney fees must be vacated and this case remanded to the magistrate court to exercise its discretion based upon an accurate view of the facts. Unfortunately, had Mother's attorney pointed out the magistrate court's error when it was addressing the issue, this remand would not have been necessary.

## VII.
### Did the District Court Err in Affirming the Magistrate Court's Order that Mountain Health Services, P.C., and Mountain Health Care, Inc., Issue Stock in the Amount of Father's Interest in the Respective Corporations and Deliver the Shares of Stock to the Sheriff?

On February 24, 2011, the magistrate court entered two purported judgments against Father, one in the amount of $10,000 for Mother's award of attorney fees and one in the amount of $198,642.00 to equalize Mother's award of community property. Neither document constituted a judgment for failure to comply with Rule 54(a) of the Idaho Rules of Civil Procedure.[11] On April 7, 2011, the court entered a document titled "Finding of Fact, Conclusion

---

[11] *See supra* n. 2.

of Law and Final Decree of Divorce," which likewise did not constitute a judgment for failure to comply with Rule 54(a).[12] On June 20, 2011, the court entered a document titled "Amended Final Decree of Divorce," which also did not constitute a judgment for failure to comply with Rule 54(a).[13]

On July 8, 2011, Mother obtained a writ of execution to enforce the two purported judgments entered on February 24, 2011. She wanted the sheriff to execute upon Father's shares of stock in the two corporations, but the writ was returned unsatisfied because the corporation had not yet issued any stock. On July 18, 2011, she filed a motion requesting, among other things, an order requiring each of the corporations to issue shares of stock representing Father's interest in that corporation and to deliver the shares of stock to the sheriff.

On September 16, 2011, Father filed an objection to the motion stating that "[o]n February 24, 2011, the Court entered two judgments"; "[n]either of these judgments resolved all of the claims and issues presented to the Court to decide [and] [n]either were certified as final under I.R.C.P.54 (b)"; and the "Amended Decree [entered on June 20, 2011,] effectively resolved all of the issues in the case and would constitute a final judgment as that term is defined in I.R.C.P. 54 (a)."[14] Father also argued that "the two February judgments were merged into the June Amended Decree of Divorce and were no longer in force nor effect as of the date the writ was obtained."

The magistrate court apparently granted the motion by order entered on September 30, 2012, but that order is not in the record. On October 23, 2012, Father's shares of stock in Mountain Health Care, Inc., were sold by the sheriff at an execution sale to Mother for a credit bid of $1.00. On the same date, Father's shares of stock in Mountain Health Services, P.C., were sold to Frederick Haller for a cash bid of $15,000.

Father made the same arguments summarized above on his appeal to the district court. In its decision on appeal, the court listed as an issue whether the magistrate court erred when it ordered Mountain Health Care, Inc., to issue stock to Father and to deliver that stock to the

---

[12] *See supra* n. 3.

[13] *See supra* n. 4.

[14] As stated above, this document did not constitute a judgment because it failed to comply with Rule 54(a).

sheriff.   However, the court did not specifically address the issue in its decision.   In the conclusion section of its decision, it did state:  "The Magistrate reached his decisions on all other issues through reason and acted within the bounds of his discretion.   There was substantial competent evidence to support those findings and conclusions."

It is apparent from the above that neither the magistrate court nor the parties were familiar with the requirements of Rule 54(a) of the Idaho Rules of Civil Procedure and our decisions interpreting that rule.  As stated above, the purported judgments issued on February 24, 2011, were not judgments, because they did not comply with the rule.  *See Supra* nn. 2-4. Likewise, the "Finding of Fact, Conclusion of Law and Final Decree of Divorce" entered on April 7, 2011, and the "Amended Final Decree of Divorce" entered on June 20, 2011, were not judgments because they also did not comply with the rule.  *Id.*  A final judgment was not entered in this case until August 14, 2014, pursuant to an order from this Court conditionally dismissing the appeal unless a final judgment was entered.   Therefore, the district court erred in affirming the magistrate court's order that the corporations issue stock and deliver it to the sheriff so that Mother could execute upon the stock.   A writ of execution could not be issued unless there was an appealable final judgment or a partial judgment certified as final under Rule 54(b) of the Idaho Rules of Civil Procedure.   I.R.C.P. 69(a).   Because the execution sales of the stock have already occurred, the parties will have to address this issue on remand to the magistrate court. The facts of this case amply illustrate why court and counsel should be aware of the requirements for a judgment under Rule 54(a).

## VIII.
### Is Mother Entitled to an Award of Attorney Fees on Appeal?

Mother requests an award of attorney fees on appeal pursuant to Idaho Code section 12-121.  "In order to be eligible for an award of attorney fees under Idaho Code section 12-121, the party must be the prevailing party on appeal."  *Armand v. Opportunity Mgmt. Co., Inc.*, 155 Idaho 592, 602, 315 P.3d 245, 255 (2013).   Both parties prevailed in part, so there is no prevailing party on appeal.

24

## Conclusion.

We affirm the decision of the district court except its affirmance of the magistrate court's: (a) award of child support; (b) valuation of Mountain Health Care, Inc.; (c) award of attorney fees; and (d) order requiring delivery of the shares of stock to the sheriff. Upon remand to the district court, it shall enter an appropriate decision on appeal so that this case can be remanded to the magistrate court for further proceedings that are consistent with this opinion. Because both parties prevailed in part on appeal, we do not award costs or attorney fees on appeal.

Chief Justice BURDICK, Justices J. JONES, HORTON and Senior Justice Pro Tem WALTERS **CONCUR.**